BONDURANT, *et. als.* v. BUFORD.

Alabama,
1   359
f127  319

1   359
132  318

1. The official tenure of a sheriff, is limited by the constitution of the State, to three years, and no writ of *discharge* or other process is necessary, in order to terminate his office.
2. Though a sheriff ceases to be such, *de jure*, yet many of his acts may be valid as a sheriff *de facto*, even after that period.    But whenever the *new sheriff* has been admitted to the exercise of his office, by taking the oath and executing the bond required, the old sheriff ceases to be an officer, either in fact or law.
3. Where a levy has been made before the return day of a *fieri facias*, the officer levying, may complete the execution by a sale after that day, although he has (in the meantime) been superceded by a successor, duly qualified.
4. The delivery of a *fieri facias* to the sheriff, creates a lien upon the personal estate of the defendant, in favor of the plaintiff, yet the property of the debtor is not divested, until the process has been actually levied.    But when the sheriff has duly seized goods, he then acquires a special property in them, and is answerable to the plaintiff to the extent of their value, and the defendant is discharged from the judgment *pro tanto.*

Bondurant *et als.* v. Buford.

5. A sheriff does not begin to do execution of a *fieri facias,* until he has levied the same. But when a levy was duly made, he was authorized at *common law,* to sell the goods seized, even after the return day, without a *venditioni exponas,* and though he was out of office. *Quere.* Does not the 14th section, of the act of 1807, "concerning executions, and for the relief of insolvent debtors," require a *venditioni exponas* to legalize such a sale.

THE defendant in error, having given notice in due form, of his intention to move for judgment against the plaintiffs, for the amount of an execution against Samuel Pickering, theretofore collected by James M. Bondurant, as sheriff of Marengo, together with interest and damages, therupon submitted a motion to the County Court of that county, in pursuance of the notice.

On the trial of the motion, the parties made a case for the decision of the County Court, in which it was agreed that an execution issued from that court, on the 3d day of July, 1838, at the suit of the defendant in error, against Samuel Pickering, for the sum of two hundred and eighteen and sixty-six one hundredths dollars damages, besides fifteen dollars and six and one quarter cents of suit. The execution was returnable to the next term of the court, to be holden in November, next ensuing; was directed to and received by the sheriff of Marengo, on the day of issuance. James M. Bondurant was elected sheriff of Marengo, on the first Monday in August, 1835, for the term of three years, and David Curry was elected his successor, on the first Monday in August, 1838, and during that month, was duly qualified, by giving bond, and taking the oaths of office; whereupon he entered upon the discharge of his official duties. After the period last mentioned, viz: on the 23d of September, 1838, the amount due on the execution for principal, interest, and costs, was paid by the defendant therein, to James M. Bondurant, as appears by his receipt to the defendant, as also his endorsement on the execution. There was no proof that a levy had been made of the execution, by Bondurant at any time. It was admitted that a legal demand had been made of the money before notice of the motion was given; and that the parties alleged in the notice to be the securities of Bondurant, joined with him in his official bond as such.

On these facts, the County Court rendered a judgment in favor of the plaintiff in the motion; and a writ of error is prosecuted to this court to revise the same.

MANNING, for the plaintiff in error.
MURPHY, contra.

COLLIER, C. J.—The only question raised at the argument is this: has a person whose constitutional term of office as sheriff has expired, and who has been superseded by the election and qualification of a successor, the right to receive money on an execution, merely because it was placed in his hands for collection, previous to the expiration of his official term?

By the common law, sheriffs were appointed by the king, *durante bene placito,* and were removable by him. When a new sheriff was appointed, and had taken the necessary oaths, &c., the writ *de exoneratio officii* issued, which discharged the old sheriff; and until the *writ of discharge* was delivered to the old sheriff, he might lawfully exercise the duties of his office. (Werbie's case, 3 Coke's Rep. 77; 6 Bacon's Ab. 159, *et post*; Watson's Shff. 20: 1.)

In this State, the official tenure of the sheriff is limited by the constitution, to three years, (Art. 4, sec. 24.) So that in order to terminate his office no writ of discharge or other process is necessary; but the limitation prescribed by the constitution effects that end.

Though a sheriff ceases to be such *de jure* at the expiration of three years, from the time of his election, yet many of his acts may be valid as a sheriff *de facto,* even after that period, if his legally chosen successor has not been inducted, upon taking the oaths, and executing such a bond as the law requires. But whenever the new sheriff is thus admitted to the exercise of his official duties, the old sheriff cannot be regarded as an officer, either in fact or in law.

Though the law be as we have stated it, yet it may be laid down as general rule, that the sheriff or other officer, who has

begun an execution under proper authority, may be compelled
to proceed in the same. Hence, it hath been adjudged that if a
sheriff seize property on a *fieri facias*, and is discharged without
having sold it, or having returned the writ, that notwithstand-
ing such discharge, and without any writ of *venditioni exponas*
he may sell the property remaining in his hands, and such sale
and execution shall be good, by force of the writ of *fieri fa-
cias*. (2 Bacon's Ab. 735; Watson's Shff. 188.)

In Purl's lessee v. Duvall, (5 Har. & J. Rep. 69,) it appeared
that a *fieri facias* was levied by the preceding sheriff, but the
property was not sold for want of buyers; a *venditioni exponas*
was placed in the hands of the successor, and the question was,
whether the sheriff levying the *fi. fa.* should not have sold
the property. The court said that the new sheriff " had no au-
thority to execute the writ of *venditioni exponas.* The
authorities clearly establish the position, that if a sheriff, upon
a *fieri facias*, seize goods, and return that they remain on hand
*pro defectu emptorum*, and he be removed, yet he, and not the
new sheriff is to proceed in the execution; for an execution
being an entire thing, he who begins it, must end it." See
also, 6 Bacon's Ab. 161; Watson's Sheriff, 22, 189, 190; Anon.
1; Hayw. Rep. 415.

In Gibb's v. Mitchell, 2 Bay. Rep. 120, it was held that a
sheriff having regularly levied a *fieri facias*, may sell after the
year and a day, or even after he is out of office. And in Cox v.
Joiner, 4 Bibb's Rep. 94, it was decided that a *venditioni expo-
as* gave no new authority, but by virtue of the levy, a sale may
be made after the return day. See also, Gaines v. Clark, 1
Bibb's Rep. 608.

It has been repeatedly adjudged that though a *fieri facias*
cannot be levied after the day of its return is past, (Devoe v.
Elliot, 2 Caines Rep. 243; Vail v. Lewis *et al.*, 4. Johns. Rep.
450;) yet where a levy has been made, before the return day, the
officer levying, may complete the execution by a sale after that
day. (Lanier v. Stone, 1. Hawks. Rep. 329; Toomer v. Purkey,
1 Const. Court Rep. 323: Prescott v. Wright, 6 Mass. Rep. 20,
Bernard v. Stevens, 2 Aik. Rep. 429.)

At the common law, the goods of a party against whom a *fieri facias* issued, were bound as against the party himself, and all claiming by assignment from, or by representation under him, from the test of the writ. And it was competent for the sheriff, after the death of the defendant, in a *fieri facias*, to seize the goods he may have left, provided, the writ bore test before his death, although not previously delivered to the sheriff. So after the death of the plaintiff, the sheriff might execute a *fieri facias*, tested in his lifetime. (Watson's Shff. 173, 175, 176.)

In Jewett v. Smith, 12 Mass. Rep. 309, the same principle is recognized, but as by the laws of Massachusetts there is no lien upon the goods of the debtors by the judgment, the award of execution, or the delivery of it to the sheriff, it was held that if a defendant dies after the issuance of a *fieri facias* and before the levy, the execution abated. And in Wagnon v. McCoy's Ex'r. 2 Bibb's Rep. 198, it was ruled that if a plaintiff die after execution delivered to the sheriff, but before it is *levied* or *replevied*, the execution abates. The court admitted the English rule to be as we have stated it, but considered that the law of Kentucky which authorized a defendant to replevy his property levied on, abrogated the rule which prevailed in England. That inasmuch as the bond was to be executed to the plaintiff, it was necessary that the person described in the execution as such, should be living: and that one not in *rerum natura* could not be the obligee.

Though the common law which gave a lien from the test of a *fieri facias* has been modified in England by the statute of the 29 Chas. 11, so as to make it bind the goods of the defendant from the delivery of the writ to the sheriff, &c., yet the property of the debtor is not divested until the process has been actually levied. (Watson's Sheriff, 176.) But when the sheriff has duly seized goods under a writ of *fieri facias*, he then acquires such a special property in them as to enable him to maintain trespass or trover against any person who may take them out of his possession, for he is answerable to the plaintiff to the value of the

goods. (Watson's Sheriff, 190, '1.) And the defendant is discharged from the judgment and all further execution, if the sheriff has taken goods to the amount of the debt, although he does not satisfy the plaintiff. (Watson's Sheriff 191.)

We have stated the principles contained in this opinion, and cited the authorities by which they are sustained, that we may discover the nature of the writ of *fieri facias*; the authority it imparts to the sheriff, and its effect upon the property of the debtor, and thus learn at what point execution begins. And to us it seems clear that the reception of the writ is not the commencement of execution. True, the law declares the effect of depositing such process in the hands of the sheriff, to be the creation of a lien upon the personal estate of the defendant in favor of the plaintiff; yet in this, the sheriff may be entirely passive. For the better manifestation of the time of the delivery, the statute directs the sheriff to endorse the period of the receipt on the writ, but this is merely directory, and the lien is not impaired by its omission. (McCown & Conrow, and another, v. Keith & Kelly, at the last term.)

It is, then, in our opinion clearly inferrable from the authorities, that a sheriff does not begin to do execution of a *fieri facias*, until he has actually levied the same; until then, he acquires no property in the estate of the defendant, but the same remains unchanged in the debtor, subject to the lien which the law imposes.

For the purpose of ascertaining when the execution of the writ begins, regard must be had to its mandate; this directs that the amount of the judgment be made by means of the goods and chattels, lands and tenements of the defendant. Now, until the money is made, or until there is a seizure of the estate of the debtor, with a view to that end, no act has been done as commanded, by the *fieri facias;* and consequently, execution is not commenced.

Again, by a seizure of property under the writ, we have seen that a special interest vests in the sheriff, who may sell it, even after the return day is past, without a *venditioni exponas*, and though he be out of office. It is on the ground of the special

interest thus acquired by the sheriff, and the discharge of the debtor to the extent of the value of the property seized, that an execution is considered an entire thing, and must be completed by him who commences it.

It has been supposed that inasmuch as the statute of the 20 Geo. 11, c. 37, directs the old sheriff at the expiration of his office, to turn over to the succeeding sheriff by indenture and schedule, all such writs and process as remain in his hands unexecuted, therefore, at common law it was the duty of the old sheriff to execute all process in his hands at the time his successor was qualified.    This supposition we think is not warranted by the premises.    This statute did not at all interfere with the rights and authority of the old sheriff, but merely required him to perform a common law duty, by the observance of certain forms, which duty was previously performed, without regard to any prescribed form.    Under this statute, it is considered that a *fieri facias* is "unexecuted" on which no proceedings have been had, but if it be levied, it is without its influence. (Watson's Sheriff, 19, 20, 21, 22 )

It will appear from several of the citations we have made, that a *venditioni exponas* was not necessary at the common law to authorize the sale of goods regularly levied on by *fieri facias.* Least it may be supposed that we have so ruled the law here, we take occasion to remark that as it is unnecessary, we decline inquiring how far the law in this particular is affected by the 14th section of the act of 1807, entitled "an act concerning executions, and for the relief of insolvent debtors." Aik. Dig. 161.

In the case at bar, it appears that though the *fieri facias* was placed in the hands of the old sheriff while in office, yet he did not move in its execution until he was superseded by a successor. Not having previously levied it, it was incompetent for him officially to receive the money; its mandate was addressed to the sheriff, the proper executive officer of the law, and he alone was competent to execute it.    The money then having been paid to Bondurant after his authority ceased, his securities are not charge-

able in any form, nor is he himself subject to the *summary* proceeding which the defendant in error prosecutes against him.

The judgment of the County Court is consequently reversed.