| 7 | 175 |
| 95 | 159 |
| 7 | 175 |
| 127 | 320 |

## J. W. & R. LEAVITT v. SMITH, ET AL.

1. The plaintiff's execution was levied by the sheriff and a claim of property interposed by a third person, and bond with surety given to try the right, pursuant to the statute ; the plaintiffs moved to dismiss the claim, which being overruled, a judgment for costs, was rendered against them, and a writ of error prosecuted to vacate the same ; the judgment was reversed and the cause remanded, then on motion of the plaintiffs, the claim was dismissed : *Held*—that these proceedings did not amount to a waiver, (upon the ground of election or otherwise,) of the summary remedy against the sheriff for neglect in failing to make the money on the execution.

2. A sheriff who has begun to do execution, should proceed therein, and having levied it, the common law requires that he should sell the goods, even after the return day, although he may have been superseded by his successor; and he is not excused for a non-performance of his duty by delivering the execution and goods to his successor, but he must sell them, or otherwise legally dispose of them. If by statute, a *venditioni exponas* is made necessary to sell the goods after the return day of the *fi. fa.*, he should at least accept it, when it is tendered him by the plaintiff.

3. Where the defendant in execution is in possession of property, the presumption is that he is the owner of it, and upon a motion against the sheriff for failing to make the money upon the execution, it devolves upon the latter to show that the property was not subject to levy and sale to satisfy the same.

4. It is competent for a sheriff when charged with neglect in failing to make the money on an execution, to prove that goods levied on by him under the impression that they belonged to the defendant, and afterwards released, were not the defendant's property; and consequently not liable to the satisfaction of the execution.

Writ of error to the Circuit Court of Coosa.

THIS was a suggestion under the statute, at the suit of the plaintiffs in error, against Smith, as the sheriff of Coosa, and the co-defendants as his sureties, alledging, that with due diligence a writ of *fieri facias* placed in the sheriff's hands, at the suit of the plaintiffs, against Jeremiah M. Friou's estate, could have been collected. The suggestion was traversed, and the issue submitted to a jury, who returned a verdict in favor of the defendants. On the trial the plaintiffs excepted to the ruling of the Court. From the bill of exceptions it appears that the plaintiffs read to the jury the execution described in the suggestion, with the indorsment of its receipt by the sheriff, showing that the same was placed in his hands four days after it was issued; on which was the following return: "Levied on a stock of goods, consisting of dry goods, hardware, carriages, &c.—property pointed out by J. W. Pryor, plaintiffs' attorney, as the property of J. M. Friou, 1st February, 1840." It was further shown by the plaintiffs that the goods levied on, were worth about seven thousand dollars, that Friou had in his possession four negroes, worth eleven or twelve hundred dollars, while the execution was in force; and during the same time he levied on a house worth about five hundred dollars. A witness stated, that it was the general understanding that the goods, negroes, and house were at the time of the levy, in the possession of A. B. Dawson and Samuel Friou; though judging from what he saw, he should say they were in possession of the defendant in execution. Here the plaintiffs rested their case.

The defendants then read to the jury in despite of the plaintiffs' objection, an order of Court made at the Fall Term, 1840, permitting the sheriff to amend his return, as also the

return made under the authority thereof, as follows: " The above goods have been claimed by A. B. Dawson and Samuel Friou, as assignees of J. M. Friou, defendant in execution, and claim bond given to Wm. J. Campbell, now sheriff, my successor in office, September 12th, 1840, A. Smith, late sheriff."

It was proved by the defendants, that on the second day of the term of the Court, to which the execution was returnable, A. B. Dawson made an affidavit, that the property levied on, was not the property of the defendant in execution, nor liable to satisfy the execution, but the title thereto was vested in himself and Samuel Friou as assignees. To the admission of this evidence the plaintiff objected.

The defendant then offered as evidence a bond executed by Dawson and Samuel Friou, with surety, for the trial of the right of the property levied on, bearing even date with Dawson's affidavit. The plaintiffs objected to its admission for the following reasons: 1. It was the duty of the sheriff to have sold the goods, and the execution of the bond formed no excuse for the failure. 2. The bond was not approved by the defendant Smith, but by his successor in office. 3. The bond contradicted the return first made on the execution. But the objections were overruled, and the evidence admitted.

The defendants also read to the jury, notwithstanding the plaintiffs' objection, an entry of the Circuit Court, made at the Spring Term, 1840, showing that a motion then made by the plaintiffs to dismiss the claim of property, was overruled. They were also permitted to read an entry, stating that plaintiffs declined to make up an issue, to try the right of property, or to join in it, when tendered by the claimants, or in any manner to prosecute the case: thereupon, the Court adjudged, that the plaintiffs be nonsuit. They were allowed further to .show that this judgment of nonsuit was reversed on error by the Supreme Court, and the cause remanded, with instructions to dismiss the claim, unless a good bond was executed.

The defendants then offered as evidence, an entry made at the Fall Term, 1842, showing that on plaintiffs' motion the claim was dismissed for the refusal of the claimants to execute a good and sufficient bond. To the admission of this the plaintiffs also objected. They also read to the jury a com-

23

mission from the Governor of this State, by which the defend-
ant Smith was appointed sheriff of Coosa county, in the place
of J. E. W. Logan, until the 22d day of February, 1840, when
his term of office was to expire.

The defendants further read to the jury a receipt of his
successor in office, signed the 27th March, 1840, for the goods
&c., levied on by the plaintiffs' execution, and a receipt for
their safekeeping by the keeper of a warehouse in Wetumpka,
dated the 21st March, 1840. And they proved that the goods
in question were delivered to Smith's successor before the re-
turn day of the execution in question, and even before the
receipt was delivered.

It was then proved by the plaintiffs, that within ten days
after the levy of their execution, they executed together with
good and sufficient sureties, bond in the sum of ten thousand
dollars, payable to the defendant Smith; conditioned to indem-
nify him against all damages he might sustain in consequence
of a levy and sale under their execution. This bond was giv-
en upon the obligee's requisition for indemnity. The plaintiffs
further showed, that on the 27th of July, 1840, they caused a
*venditioni exponas* to be issued, requiring the sale of the
goods levied on, which was offered to the defendant with in-
structions to execute its mandate, and with notice that in case
of neglect he would be held liable. But he refused to receive
the writ—stating that he was not in possession of the goods.

The plaintiffs thereupon prayed the Court to instruct the
jury as follows :

1. If they believed that the defendant in execution had suf-
ficient property in Coosa county, while the execution was in
Smith's hands, and that he received the execution on the day
indicated by his indorsement, then it was his duty to have
made the money thereon before its return, and the claim in-
terposed by Dawson and Friou, was no defence in the present
case. This instruction was refused by the Court.

2. If the goods referred to in the original return of the de-
fendant Smith, on the plaintiffs' execution, were of value
sufficient to satisfy the same, their delivery to his successor
before the return day of the execution, although his term of
office expired, and the interposition of the claim on the second
day of the next Court by Dawson and Friou, did not relieve

the defendants from liability ; and they should find for the plaintiffs.   This prayer was in like manner denied.

3.  If the execution of the plaintiffs was placed in the hands of Smith at the date of his indorsement thereon, and from that time up to the day of its return, the defendant had sufficient property in Coosa county to satisfy the same ; then the expiration of the defendant's official term, the proceedings under the execution, the claim of property, &c., (particularly summing up all the facts shown by the bill of exceptions to have been proved at the trial,) did not excuse the defendants from liability if the property levied on belonged to the defendant in execution.   This instruction was also refused.

The questions arising upon the objections to the testimony, and the prayer for instructions, are all duly reserved.

J. W. PRYOR, for the plaintiff in error.   The irregular judgment of nonsuit, rendered against the plaintiffs on the claim of property interposed by Dawson and Samuel Friou, (although the Court went so far as to direct a delivery of the goods to the claimants,) cannot in any manner prejudice the plaintiffs' right to recover of the defendants.   The order in respect to the goods was extrajudicial, and could neither give or divest rights.   But if it was effectual for any purpose, it cannot be set up by the defendants, as the judgment of reversal entirely vacated it.   [4 Ala. Rep. 335.]

The amended return made by the defendant Smith, was irregular and afforded no answer to the suggestion ; because the claim of property was made after the return of the execution, and the bond approved by the sheriff's successor, instead of himself.   So in respect to all the evidence objected to, it may be said to have been irrelevant, and for that cause inadmissible. [Bondurant, et al. v. Buford, 1 Ala. Rep. N. S. 359.]

The evidence clearly warranted the first and second instructions prayed; for it was shown not only that the defendant in execution was in possession of the property levied on, but of other property also.   The third prayer merely asked the Court to charge the jury, that if the defendant in execution was the proprietor of sufficient property to satisfy the execution, which had been levied on, then they should find for the defendants. The principle here assumed cannot be denied.

Nothing that was done by the plaintiffs after their execution was delivered to the sheriff amounts to a waiver of their right to proceed against him. [23 Wend. Rep. 490–6; Id. 306–9; 4 M. & P. Rep. 790; 8 B. & C. Rep. 132; 15 Eng. C. L. Rep. 165.] The case of Rawson v. Turner, 4 Johns. Rep. 469, is unlike the present. There the plaintiff attempted to pursue a remedy, inconsistent with that he had previously prosecuted.

W. W. Morris, for the defendants. Whether the defendant Smith employed due diligence in endeavoring to make the money on the execution is a mixed question of law and fact. The mere omission to collect it, in the absence of all proof of negligence or malfeasance, does not entitle the plaintiff to recover in the summary proceeding which he has instituted. [1 Stew. Rep. 438.] Time was necessary to make an inventory of the goods levied on, so that they could not be sold at the expiration of ten days; and before the sheriff could make the necessary preparation to advertise and sell, his commission expired. Under the impression that his powers had ceased, he turned over to his successor the execution and the goods before the return day; and even if he was mistaken in this, yet the facts proved at the trial afford a sufficient answer to the suggestion.

Conceding that the sheriff was guilty of such negligence as to make himself liable, yet as the plaintiffs elected to proceed in the trial of the right of property against Dawson and Friou, they cannot now charge him upon a suggestion of negligence. [McElroy v. Mancius, 13 Johns. Rep. 121.]

As to the order of the Circuit Court upon directing the nonsuit, that the goods should have been delivered to the claimants, whether extrajudicial or not, the sheriff was bound to obey it, as the plaintiffs' did not supersede it by a writ of error bond.

The bond for the trial of the right of property though defective, was not so entirely null, as not to furnish a protection to the sheriff in delivering up the property. As to the tender of the *venditioni exponas* to the sheriff, it does not aid in making out the plaintiffs' case; if it proves any thing, it rather shows that they had elected to proceed against the goods.

The first charge prayed, stated the law correctly in a proper case, but the facts were not adapted to it. The other charges

were properly refused—they required the opinion of the Court upon a question of fact, which was properly referable to the jury.

COLLIER, C. J—It is insisted for the defendants, that if the Circuit Court erred in the admission of evidence, or in the refusal to charge the jury, the plaintiffs were not prejudiced, and cannot complain; because the proceedings upon the claim of property interposed by Dawson and S. Friou, amount to an election to pursue that remedy, and bars the motion against the sheriff for a failure to perform his duty. There is nothing in the record from which it can be inferred, that the plaintiffs were willing to proceed to the trial of the right of property, or had elected that case as a mode of making their judgment available. That was a procedure originated by the claimants under the authority of a statute, in order to prevent the sale of goods levied on, unless the right asserted by them, should be adjudged invalid. The plaintiffs could not control the interposition of such a claim, and if regularly made the sheriff was bound to allow it. The case then is commenced and placed upon the trial docket, without the agency of the plaintiffs, and under circumstances that show that they were entirely passive.

This being the condition of the claim of property, the plaintiffs moved the Court as soon as it was docketed, to dismiss it: this motion being overruled, they declined proceeding to trial, and a judgment of nonsuit with costs, was rendered against them. To reverse this judgment, they prosecuted a writ of error to this Court; and upon the cause being remanded they again moved for a dismissal for the defectiveness of the claimants bond: this motion was granted upon the refusal of the latter to perfect their bond. So far from all this showing an election to proceed to try the right of property, it rather indicates the reverse; else why ask the Court, whenever an opportunity presented itself, to repudiate that case? No adverse inference can be drawn from the prosecution of the writ of error by the plaintiffs. The reversal of the judgment of nonsuit could only have been sought for the purpose of relieving the plaintiffs from the payment of costs, and having the case so disposed of, as not to prejudice their rights.

But suppose the plaintiffs had voluntarily submitted to a trial of the right of property, and been unsuccessful, would this have availed the defendants as a bar to a remedy against him for neglect. In Baylis v. Usher 4 Moore & P. Rep. 791–2, Bosanquest, Justice, said, "a right of action once vested can only be destroyed by a release under seal, or by the receipt of something in satisfaction of the wrong done; and therefore the tenant does not waive his right of action for an excessive distress, though he enter into a written agreement with his landlord, respecting the sale of the effects seized." And in Willoughby v. Bockhouse, 4 Dowl. & R. Rep. 539, Bayley, Justice, said, there was no such thing as a man's waiving his right of action, when once a wrong had been committed. Mr. Justice Cowen, succeeds a quotation of this remark with the emphatic inquiry, "And indeed it may be asked, who ever heard of such a thing being held?" He also said, "Nothing is better settled than that, after an injury has beeen committed, the cause of action cannot be discharged by any act of the plaintiff short of a release, or acceptance of something in satisfaction." And this principle he enforces by the familiar case of the delivery to, and acceptance of goods by the plaintiff after the conversion or tort has been committed; in which it is held, that *trover* or *trespass* is not thereby barred. [Bowman v. Teall, 23 Wend. Rep. 309.]

In Ravenscroft v. Eyles, 2 Wils. Rep. 294, it was decided that an action upon the case, for an escape upon *mesne* process, was maintainable against the Warden of the Fleet, although the prisoner returned and submitted himself to custody on the same day, and the plaintiff proceeded to final judgment againt him, with a full knowledge of his escape.

It has been held, that where the plaintiff without a knowledge of the prisoner's previous escape, opposed his discharge under the act for the relief of insolvent debtors, he might, notwithstanding, maintain an action against the sheriff for the escape. [Dash v. Van Kleeck, 7 Johns. Rep. 477.] But where a plaintiff brings an action against the sheriff for an es cape, he has elected to consider the prisoner as out of custody, and cannot oppose his discharge under the insolvent act. [McElroy v. Mancius, 13 Johns. Rep. 121.] So where a new sheriff receives a prisoner from his predecessor, who had pre-

J. W. & R. Leavitt v. Smith, et al.

viously made a voluntary escape, he is bound to keep him securely, and the plaintiff has his election to consider the prisoner in execution, and charge the new sheriff for an escape from him, or as out of custody, and charge his predecessor. If he has made his election, and prosecuted a suit to judgment against the latter, this is a bar to an action against the former. [Rawson v. Turner, 4 Johns. Rep. 469.]

The cases in which the election of a remedy against one person, will bar an action against another, are those in which the actions are inconsistent with each other, and the one last brought requires the proof of facts incompatible with the first; and which the latter impliedly affirms does not exist, or if they do exist, it waives the benefit of them. There is no incongruity in charging the sheriff with neglect of duty in not making the money on execution, after having moved the dismissal of a claim to property, on which the execution was levied. Such a motion, even if it recognized the case, and manifested a willingness to try it, or if there had been a trial in fact, would not waive the summary remedy for neglect, or affirm that neglect was not incompatible. How can the want of official diligence be expurgated by attempting to subject to the satisfaction of an execution, property on which the officer had levied. Such a proceeding merely affirms the liability of the property, but neither denies or excuses the neglect. The remedy then, against the sheriff is concurrent or at most cumulative, and remains unimpaired by the claim of property, whether tried or not.

A sheriff or other officer, who has begun to do execution may be compelled to proceed therein, and having levied it, it was his duty at *common law* to sell the goods seized, even after the return day; and this although he had been superseded (in the meantime) by a successor duly qualified. The law in this respect remains unchanged, *unless* it be to require a *venditioni exponas* to warrant the sale after the *fieri facias* has lost its energy. [Bondurant, et al. v. Buford, 1 Ala. Rep. 359.] The delivery of the goods, together with the execution to the defendant's successor, did not absolve the defendants from the obligation to sell or otherwise legally dispose of them. Having levied the *fi. fa.* it was his duty to provide for the safe-keeping of the goods, as they were not replevied, and if to authorize a

sale a *venditioni exponas* was necessary, (upon which we express no opinion) he should at least have accepted it when offered.   If they had been replevied upon good security, or the claim of property had been regularly interposed upon affidavit and bond, then the defendant Smith, might have delivered the goods to the defendant in execution in the one case, and the claimants in the other: and such a disposition would have relieved him from the imputation of the want of due diligence in selling them.

Whether the claim made while the execution was in the hands of the defendant Smith's successor, was so interposed as to prevent the claimants from objecting to its irregularity, we need not inquire.   We have already said that the goods were properly in his hands by the levy, and that he did not legally dispose of them.   The evidence adduced by the defendant does not furnish an answer to the suggestion, or in any manner repel the presumption of neglect, which is inferable from the fact that the defendant in execution was in possession of property, a part of which had been levied on.   In Minter v. Bigelow & Co. 9 Porter's Rep. 481, it was determined, that it would be presumed that a defendant in execution was the owner of property of which he was in possession; and that it devolved upon a sheriff, against whom a motion was made for failing to make the money on a *fi. fa.* upon a suggestion of a want of due diligence, to show that the property was not liable to its satisfaction.   See also Robertson v. Beavers, 3 Porter's Rep. 385.   No proof tending to such a conclusion was offered, and the inference as well upon the reason of the thing, as upon the authority cited was, that not only the goods, but the other property of which the defendant in execution was ostensibly possessed, were subject to seizure and sale.

The statute under which the present case was instituted enacts, that upon the failure of any sheriff or coroner to make the money on an execution, the plaintiff may suggest to the Court, that the money could have been made with due diligence; thereupon it shall be the duty of the Court forthwith to cause an issue to be made up to try the fact; and if it shall be found by the jury, that the money could have been made with due diligence, judgment shall be rendered against the sheriff or coroner, or his sureties, or any or either of them, for the sum of

money specified in the execution, with ten per centum, &c. as damages. [Clay's Dig. 218, § 85.] In Hallett v. Lee & others, 3 Ala. Rep. 28, it was held, that the defendants to the motion might plead to the suggestion any matter in excuse or avoidance, which would negative its truth. And we apprehend it would be entirely competent for the sheriff to show as well before as after levy that the money could not be made. The levy will not estop him from denying that the property seized was the defendants. In taking it, he merely affirms that he believes it is subject to the execution, and when charged with the want of diligence, it is incumbent on him to show that he was mistaken.

The facts proved by the defendants we have seen, were in themselves immaterial and made out no defence; they should consequently have been excluded. But being admitted, when taken in connection with the evidence offered by the plaintiffs, a sufficient foundation was laid for the instructions asked; and they should have been given to the jury. The consequence is, that the Circuit Court erred; its judgment is therefore reversed and the cause remanded.