## PATTON *vs.* HAMNER.

[DETINUE FOR A SLAVE.]

1. *Plea of title before suit brought defective.*—In detinue for a slave, a plea which only shows that the title was in the defendant on a specified day before the commencement of the action, is bad on demurrer.
2. *Demurrer visited on first defective pleading.*—Where there is a defective replication to a defective plea, a demurrer to the replication should be visited on the plea.
3. *Sheriff's duty in levying fi. fa.*—The sheriff is bound to pursue the mandate of an execution, unless otherwise instructed by the plaintiff, his attorney, or some one having an interest admitted by the plaintiff; and is not bound to determine the conflicting rights and interests which arise under an agreement, between the plaintiff in execution, under a former levy, and a statutory claimant, to the effect that a judgment of condemnation should be rendered for the agreed value of the property, and that the claimant, on paying this agreed value, should have the property: such an agreement does not, as against the sheriff, render void an *alias fi. fa.*

APPEAL from the Circuit Court of Wilcox.
Tried before the Hon. C. W. RAPIER.

DETINUE, by Louisa Patton, against George M. Hamner, for a slave named Sarah. The defendant pleaded, 1st, *non detinet ;* and, 2d, a special plea which was, in substance, as follows: That on the 5th March, 1850, one Benjamin Patton, who had been and then was the guardian of the personal property belonging to Josiah J. Stewart and William C. Stewart, two minors, made a final settlement of his guardianship before the probate court of Wilcox, and two judgments were then rendered against him by said court, in favor of his said wards ; that executions were duly issued on these two judgments, and were placed in the hands of George M. Hamner, who was then the sheriff of said county ; that said Hamner, on the 12th September, 1851, while said executions were still of force, levied them on the slave now in controversy, as the property of said Benjamin Patton ; that Louisa Patton, the plaintiff in this suit, interposed a claim to the said slave under the statute in such case made and provided, and a trial of the right of property was afterwards had at the Spring term, 1851, of the circuit court of Wilcox, when, by the con-

sideration of said court, a judgment was rendered in each case, subjecting said slave to said executions; that afterwards, on the 9th August and 9th September, 1851, *alias* executions were issued on said judgments, and placed in the hands of said sheriff, who, on the 12th September, 1851, again levied them on said slave, and on the 6th October following, while said executions were still of force, after having duly advertised the sale, sold said slave, before the court-house door of the county, to the highest bidder; that Calvin C. Sellers became the purchaser at said sale, at the price of $600, and on the 7th October, 1851, sold and delivered said slave to defendant; of all which plaintiff then and there had notice.

To this plea the plaintiff replied as follows:

" 1. *Precludi non,* because she says, that she admits every thing in said plea to be true, except that there was a trial of the right of property by a jury, as set out in said plea, and a condemnation of the slave sued for by a jury; and plaintiff avers, that said judgment entries of condemnation were made without the interposition of a jury, and on the following agreement with said plaintiffs in execution, with the consent of said defendant in execution—viz., that the slave sued for in this action should be valued at $350, other slaves being levied on under said executions supposed to be sufficient to satisfy the same; that a judgment of condemnation should go; and that the claimant, who is the plaintiff in this action, upon the payment of said agreed value within a reasonable time thereafter, with interest and costs of claim and condemnation, should have said slaves as her own property. And plaintiff further avers, that within a reasonable time thereafter, to-wit, on or about the 20th September, 1851, she tendered said agreed sum, with interest thereon and the costs aforesaid up to the time of said tender, to the defendant, George M. Hamner, who then and there held said slave as sheriff of said county, and who then and there had notice of said agreement, and who then and there refused to receive said money, or to deliver said slave to her or her agent, but held and sold said slave under said executions; and this the plaintiff is ready to verify.

" 2. And for further replication to said second plea, by consent of the defendant, said plaintiff says, *precludi non,*

because she says, that said judgment entries of condemnation were then, and now are, wholly void in law, for fraud of said plaintiffs in execution, because they were procured under the agreement set out in the foregoing replication, with the consent of said defendant in execution, with an intention on their part, at the time of procuring it, unknown to this plaintiff, to violate and disregard the same; and that the sale under said executions is equally void with said judgments of condemnation; and this the plaintiff is ready to verify.

" 3. And for further replication," &c., " *precludi non*, because she says, that under the said agreement set out in the first foregoing replication, within the reasonable time aforesaid, she tendered to the said defendant, who was then the sheriff of said county, and then and there having notice of said agreement and consent of said defendant in execution, and holding said slave under said executions, the agreed amount of the said judgments of condemnation, with the costs aforesaid, and interest up to the time of tender, which said defendant refused to accept or receive; and that thereby the said contract and agreement became and was then and there wholly rescinded, and said entries of condemnation *precluded?* and the title to said slave vested in said plaintiff; and this she is ready to verify.

" 4 And for further replication," &c., " *precludi non*, because she says, that after the judgment entries of condemnation aforesaid, and while the said Hamner, as sheriff, held said slave under said execution, she tendered to him the agreed value of said slave, to-wit, the sum of $350, with interest thereon up to the time of said tender, and the costs of the said claim and condemnation, which moneys the said defendant refused to receive, but held and sold said slave under said executions, as shown in said second plea; and plaintiff avers, that the said defendant, at the time of said tender, and before said sale, had notice of said judgments of condemnation, and the said agreed value of said slave; and this she is ready to verify."

The defendant demurred, in short by consent, to each one of these replications, and the court sustained his demurrer; and the judgment on the demurrer is now assigned as error.

GEO. W. GAYLE, for the appellant, contended,—

1. That a special, or qualified property, is sufficient to maintain detinue.—Stoker v. Yerby, 11 Ala. 322; Miller v. Eatman, *ib.* 609; Dozier v. Joyce, 8 Porter, 303.

2. That detinue can be maintained upon the facts set out in the first replication.—Pharr & Beck v. Bachelor, 3 Ala. 237; Sadler v. Robinson, 2 Stew. 520.

3. That the second replication, averring that the judgment was fraudulent, was good.—Crawford v. Simonton's Executors, 7 Porter, 110. The judgment being fraudulently obtained, the title to the slave remained in the appellant, and authorized the action.

4. That the claimant, on judgment of condemnation, has the right to pay the judgment, and hold his property; and the tender and refusal of the amount of the agreed judgment, rescinded the contract, and authorized a recovery in detinue. Wallis v. Rhea & Ross, 10 Ala. 451.

GEO. W. STONE, contra, made the following points:

1. The first replication of tender was bad, because it did not bring the money into court, and tender it to defendant.

2. The third replication is bad for the same reason, and because the alleged refusal to accept the money could not operate a rescission.

3. The fourth replication is bad, because there is no averment that Hamner knew of the agreement, and because the money is not brought into court.—Emmons v. Myers, 7 How. Miss. 375; Sheriden v. Smith, 2 Hill's (N. Y.) R. 538; Brooklyn Bank v. DeGrauw, 23 Wend. 342; Lanier v. Trigg, 6 Sm. & Mar. 641.

4. The second replication sets up no such state of facts as constitutes a fraud in obtaining the judgment. To produce such result, there must be fraud, *i. e.* a false statement of facts, in entering up the judgment; either *suggestio falsi,* or *suppressio veri.* The replication avers only a premeditated breach of promise.

RICE, C. J.—A verdict and judgment rendered in the spring of 1851, against the claimant of a slave, on the trial of the right of property, do not constitute a bar to a title to

the slave *subsequently acquired* by the claimant.—McKissick v. McKissick, 6 Humph. Rep. 75.

Where an action of detinue for a slave was commenced in August, 1852, and a declaration was filed in the usual form, a plea thereto is bad, if it shows no more than that title to the slave was in the defendant on a specified day *before* the commencement of the action—to-wit, on the 7th day of October, 1851.—Wittick v. Traun, 25 Ala. Rep. 317.

The principles above announced, impel us to the conclusion, that the special plea in this case is bad. It can, however, be made good by an additional averment, to the effect that the appellant has not, since the interposition of her claim under the statute mentioned in the plea, acquired any title to the slave.

As the plea in its present shape is bad, it was erroneous to sustain the demurrers to the several replications to it, although each of these replications was in itself bad. The demurrers to the replications should have been visited back on the plea.

If the plea should be amended, according to the intimation above given, it cannot be answered, or avoided, by any of the replications set forth in this record. Admitting the truth of *every fact* stated in any of them, the executions under which the sheriff sold the slave in controversy were not void, and he had authority to make the sale under them.—3 Phil. on Ev. (ed. of 1839) 855 ; 3 Cranch, 306 ; 18 Ala. R. 668 ; 2 Tidd's Practice, 1032. He was not bound to recognize any right asserted by the appellant under the agreement mentioned in the replications. The plaintiff in the execution had the right to control his own process ; and the sheriff was bound to pursue the mandate of the process, unless otherwise instructed by the plaintiff therein, or his attorney, or by some one having an interest admitted by the plaintiff. The sheriff certainly was not bound to constitute himself a judge, to determine the questions of conflicting rights and interests which arose out of the agreement mentioned in the replications.—Oswitchee Co. v. Hope, 5 Ala. R. 629 ; Gary v. Boykin, 7 Ala. R. 154; Crenshaw v. Harrison, 8 Ala. R. 342 ; Baylor v. Scott, 2 Porter's Rep. 315 ; Williams v. Charles, 7 Ala. R. 202 ; Bondurant v. Buford, 1 Ala. Rep. 359 ; Spence v. Eldridge, 16 Ala. R. 682 ; Chenault v. Walker, 22 Ala. R. 275; White

& Tudor's L. C. in Eq., vol. 2, pt. 2, top page 109 ; Luddington v. Beck, 2 Conn. Rep. 706; Jackson v. Caldwell, 1 Cowen, 622.

It is, perhaps, proper to state, that our remarks as to the replications must be confined to the matters which appear in them at present. We cannot know what alterations may hereafter be made in them ; and of course, we remain wholly uncommitted as to any such alterations.

For the error of the court below, above mentioned, its judgment is reversed; and the cause remanded.