# PATTON *vs.* HAMNER.

[DETINUE FOR SLAVES.]

1. *Plea of former recovery.*—In detinue, a plea of former recovery in a statutory claim suit, averring that plaintiff has not acquired any title since the rendition of that judgment and verdict, is a bar to the action.

2. *Judgment not merged in forfeited claim bond.*—The forfeiture of a claim bond does not operate as merger or satisfaction of the original judgment, nor does it deprive the plaintiff of the right to sue out an *alias* or *pluries* execution.

3. *Validity of execution and levy thereof.*—An agreement between the parties to a pending claim suit, to the effect that a judgment of condemnation should be rendered for the plaintiff in execution, for a sum less than the real value of the slave in controversy, and that the title to the slave should vest in the claimant on payment of this agreed value within a reasonable time, does not render void an execution afterwards issued on the judgment of condemnation; nor does it affect the authority of the sheriff to levy on and sell the slave under the execution, notwithstanding a tender of the agreed value by the claimant.

Patton v. Hamner.

APPEAL from the Circuit Court of Wilcox.
Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by Louisa Patton, against George M. Hamner, to recover a slave named Sarah, and was commenced on the 23d August, 1852. The case was before this court at its January term, 1856, when the judgment of the circuit court was reversed, and the cause remanded.—See 28 Ala. 618. The defendant's second plea, as set out in the present record, is as follows:

"*Actio non*, because he says that heretofore, in the probate court of Wilcox county, at a special term thereof, to-wit, on the 5th day of March, 1850, one Benjamin Patton, who had been and was guardian of the persons and property of two minor wards, to-wit, Josiah J. Stewart and William C. Stewart, came and was brought to a final settlement of his said guardianship; and, on such final settlement, two several judgments and decrees were rendered against him as such guardian; one, in favor of William C. Stewart, for $1,690 70; and one in favor of Josiah J. Stewart, for $1,690 70. And said defendant further avers, that afterwards, to-wit, on ———, executions of *fieri facias* were duly issued on said decrees, and were placed in the hands of George M. Hamner, who was then the sheriff of Wilcox county, and who afterwards, to-wit, on the 12th September, 1850, while said executions were of force, levied said executions on the said slave Sarah, as the property of the said Benjamin Patton; that the said Louisa Patton, the plaintiff in this suit, afterwards, on, to-wit, —— made affidavits, and interposed claims to said slave under the statute, and a trial of the right of the slave was had; that afterwards, in the circuit court of Wilcox county, at the spring term thereof, 1851, said issues and the trial.of the right of property came up for trial,—one between said W. C. Stewart, as plaintiff in execution, and Louisa Patton, as claimant; and the other between Josiah J. Stewart, as plaintiff, and Louisa Patton, as claimant—and by the consideration and judgment of said court, in each of said cases, it was then and there considered and adjudged by the court, that said slave was

subject to each of said executions. And the defendant further avers, that the said plaintiff has not, since the interposition of her said claim, nor since the trial aforesaid, acquired any title whatever to the said slave; that afterwards, on the 9th August and 9th September, 1851, *alias* executions were issued on said decrees of the probate court, and placed in the hands of said George M. Hamner, so being sheriff as aforesaid, who afterwards, on the 12th September, 1851, while said executions were of force, seized and levied on said slave, under and by virtue of said executions; that afterwards, on the 6th October, 1851, having duly advertised said slave, said sheriff proceeded to sell her, before the court-house door in Wilcox county, to the highest bidder, and one Calvin C. Sellers became the purchaser, at and for the price of $600; that afterwards, on the 7th October, 1851, before the commencement of this suit, said Sellers sold and delivered said slave to the defendant, George M. Hamner, (of all which the plaintiff then and there had notice;) that said slave was in the possession of said Hamner, from the time of said sale, up to the commencement of this suit; and that plaintiff has not, since the interposition of her said claim to said slave, and the trial of the right of property in and to said slave as aforesaid, acquired any title to said slave. And this the defendant is ready to verify."

To this plea the plaintiff filed six replications, "in short by consent," as follows:

1. "*Precludi non*, because she says, that she admits every thing in said plea to be true, except that there was a trial of the right of property by a judge, as set out in said plea, and a condemnation of the slave sued for by a jury; and she avers, that the said judgment entries of condemnation were made without the intervention of a jury, and on the following agreement with said plaintiffs in execution, with the consent of said defendant in execution, to-wit: that the slave sued for in this action should be valued at $350, (the other slaves levied on being supposed sufficient to satisfy said executions,) and that a judgment of condemnation should go, and that the claim-

ant, (the plaintiff in this action,) upon the payment of said agreed value within a reasonable time, together with interest and costs of claim and condemnation, should have said slave as her own property. And plaintiff further avers, that within a reasonable time thereafter, to-wit, on or about the 20th September, 1851, she tendered said agreed sum, with interest thereon and the costs aforesaid up to the time of said tender, to the defendant, George M. Hamner, and to the plaintiffs in the original executions, who (?) then and there held said slave as sheriff of said county, and who then and there had notice of said agreement, and who then and there refused to receive said money, or to deliver said slave to her or her agent, but held and sold said slave under the execution aforesaid; that by virtue of said agreement, and of the tender and refusal aforesaid, said slave became and now is her property; and the amount so tendered she is willing and now offers to deposit in court."

2. "*Precludi non,* because she says, that said judgment entries of condemnation were, and now are, wholly void in law for fraud of said plaintiffs in execution, because they were procured under the agreement set out in the foregoing replication, with the consent of said defendant in execution, with an intention on their part at the time of procuring it, unknown to plaintiff, to violate and disregard the same; and that the sale under said executions is equally void with said judgments of condemnation; and that neither the said C. C. Sellers nor the defendant acquired any title to the said slave under the same, but she is now, and was at the commencement of this suit, the plaintiff's property. And this she is ready to verify."

3. "*Precludi non,* because she says that, under the agreement set out in her said first replication, within the reasonable time aforesaid, she tendered to the defendant, who was then the sheriff of said county, and then and there had notice of said agreement and consent of defendant in execution, and was holding said slave under said executions, the agreed amounts of the said judgments of condemnation, with the costs aforesaid, and interest up to

the time of tender, which said defendant refused to accept or receive ; and that thereby the said agreement became and was then and there wholly rescinded, and said entries of condemnation canceled, and the title to said slave then and there vested in plaintiff. And this she is ready to verify."

4. " *Precludi non*, because she says that, after said judgment entries of condemnation [were rendered,] and while said Hamner, as sheriff as aforesaid, held said slaves under said executions, she tendered to him the agreed value of said slave, to-wit, the sum of $350, with interest thereon up to the time of tender, and the costs of said claim and condemnation ; which said moneys he, the said Hamner, refused to receive, but held and sold said slave under said executions, as shown by said second plea; and that at the time of said tender, and before said sale, the said Hamner had notice of the said judgment of condemnation, and the said agreed value of said slave. And this the plaintiff is ready to verify."

5. " *Precludi non*, because she says, that the said C. C. Sellers was the attorney-at-law of the said plaintiffs in execution, on the recovery of said judgments in the orphans' court, and in said claim suits, and, as such attorney, participated in making the said agreement stated in plaintiff's first replication; that after said judgment entries were made under said agreement, and after the adjournment of the court at which term they were made, and without any change of said agreement, said Sellers, as such attorney, caused and procured the said executions, under which said slave was sold as aforesaid, to be issued and levied as aforesaid ; that on the day of the sale of said slave, and before said slave was sold, he was informed and knew that plaintiff had made the tender aforesaid, and did not, as he had the right and the power to do, request or instruct said defendant to receive the money tendered, nor stop the said sale, but became himself the purchaser of the slave at said sale, and afterwards sold said slave to defendant. And plaintiff avers, that thereby said Sellers acquired no title to said slave by his said purchase, as he was cognizant of and participated in the facts

stated in this replication; and that said Hamner, the defendant, acquired no title by his purchase from said Sellers; but that the title to said slave continued in plaintiff, and was in her at the commencement of this suit. And this she is ready to verify."

6. "*Precludi non*, because she says, that after the said judgment entries of condemnation [were rendered,] and within a reasonable time thereafter, she tendered to the attorney of the plaintiff in execution the agreed value of said slave, to-wit, the sum of $350, with interest thereon up to the time of the tender, and the costs of said claim and condemnation; which moneys the said plaintiff refused to receive. And this she is ready to verify."

The defendant demurred, "in short by consent," to each of these replications; but the record does not show that any causes of demurrer were specified. The court sustained the demurrers, and the plaintiff was compelled to take a nonsuit; which she now moves to set aside, and assigns as error the sustaining of the demurrers to the several replications.

GEORGE W. GAYLE, for the appellant.

No counsel appeared for the appellee.

RICE, C. J.—The averment added to the second plea, after it was remanded, made the plea good.—Patton v. Hamner, 28 Ala. 618.

[2.] The claim bond, required by the statute, is intended to furnish an *additional* security to the creditor, and cannot be so construed as to work injury to him. Its forfeiture may give him rights, but cannot deprive him of the pre-existing right to sue out an *alias* or *pluries* execution on his original judgment. The doctrine, that on the forfeiture of such bond, the original judgment is merged or satisfied, or in any way impaired in its force or efficacy, does not obtain in this State.—Hopkins v. Land, 4 Ala. 427; Caperton v. Martin, 5 Ala. 217; Curry v. Bank, 13 Ala. 304; Bradford v. Dawson, 2 Ala. 203; Fryer v. Dennis, 2 Ala. 144; Kemp v. Porter, 7 Ala. 138; Langdon v. Brumby, 7 Ala. 53.

[3.] Although the replications have been somewhat changed since the case was formerly here, yet they are still bad under the law as laid down in the former opinion. "Admitting the truth of *every fact* stated in any of them, the executions, under which the sheriff sold the slave in controversy, were not void, and he had authority to make the sale under them. He was not bound to recognize any right asserted by the appellant under the agreement mentioned in the replications," nor to constitute himself a judge, to determine the questions of conflicting rights and interests which arose out of that agreement; nor to disobey the mandate of the executions, because of a tender, which depended for its efficacy entirely upon the validity and effect of the alleged agreement.—See Patton v. Hamner, *supra*, and authorities there cited.

There is no error, and the judgment is affirmed.

STONE, J., not sitting.