# W. K. Syson Timber Co. *v.* Dickens.

*Trespass.*

(Decided April 29, 1906. 40 So. Rep. 753.)

1. *Pleading; Demurrer; Pleading over after Demurrer Overruled.*—The original complaint was demurred to and the demurrer overruled; the complaint was amended afterwards, but a demurrer was not filed to the complaint as amended, nor was the original demurrer refiled; Held, that appellant may not complain of the court's action in overruling the original demurrer.

2. *Trespass; Pleadings; Issues; Proof; Variance.*—Proof of a trespass to a boom in a lake, where it appears that the lake was a part of the creek and that the boom was across a part of the

lake, was not at variance with the complaint for trespass to a boom in the creek.

3. *Trial; Jury Question; Weight of Evidence.*—Where the complaint complained of a trespass to a boom by one acting for defendant company, and the evidence was in conflict as to whether such person was so acting, it became a question for the jury, and the defendant was not entitled to the general charge.

4. *Trespass; Damages.*—The reasonable amount expended in using all proper means to reduce the damage as much as possible constitutes a proper part of the damages recoverable in an action of trespass in breaking a boom and removing timber and logs therefrom.

5. *Judgment; Res Adjudicata.*—A former recovery of damages in trover, and satisfaction of such judgment, is a bar to an action of detinue between the parties for the same property.

6. *Trespass; Persons Entitled to Sue.*—Trespass is the proper action to recover for a wrong against the possession, and one having the rightful possession of property, although the title be in another, may maintain trespass for a wrong done such property.

7. *Trespass; Defenses; Title in Third Parties.*—One in possession of personal property is *prima facie* the owner, and the presumption of ownership therein may not be disputed by a trespasser who does not connect himself with the true title.

APPEAL from Mobile Circuit Court.

Heard before HON. SAMUEL B. BROWNE.

Action by Charles Dickens against W. K. Syson Timber Co., for trespass in breaking a boom and taking certain logs therefrom. The facts are sufficiently stated in the opinion of the court.

CHARLES L. BROMBERG and MASSEY WILSON, for appellant.—No brief came to the reporter.

GREGORY L. and H. T. SMITH, for appellee.—No brief came to the reporter.

HARALSON, J.—This is an action of trespass by the plaintiff, against the defendant for a trespass "upon a certain boom in Chickasawbogue creek, in Mobile county, alleged to have been in the possession of the plaintiff at

the time of the trespass, and for cutting and breaking the fastenings of said boom, and for breaking or cutting the fastenings of certain logs in said boom, thereby causing said logs to escape from said boom, and thereby damaging plaintiff on, to-wit, the 11th day of April, 1903," the averment as to damage being, that "the plaintiff was put to great cost and expense in ascertaining the location of said logs, and repossessing himself thereof, and returning them to a place of custody and safety and caring for them while so doing."

The complaint, as originally filed, was demurred to and the demurrer overruled, but as amended, no demurrer was interposed, nor was the demurrer to the original complaint refiled. The defendant is in no condition to complain of the overruling of the demurrer.—*L. & N. R. R. Co. v. Woods,* 105 Ala. 561, 17 South. 41. Moreover, this ruling is not insisted on as error in argument.

The evidence tended to show, that plaintiff had some logs in Chickasawbogue creek, the last of the year 1902, consisting of 450 logs and timbers, and he was notified by one Syson that 35 sticks of the timber belonged to them, the defendant company, and if he did not turn them loose, they would sue him for them, and, without more, suit was commenced against him for them, and he put the timbers in a place he selected as a safe one for them to await the result of the suit. Plaintiff testified that he sent a man by the name of Lasseter, to a woman named Victoria Bernard, who owned a lake, called Wiggins lake, which he thought was a safe place to store the timbers, and rented the same from her, and put his lumber, timbers, etc., in said lake. It appears from the evidence that this boom was broken open and much of the timber taken away and impounded in Syson & Co.'s boom. After this, as the evidence tends to show, one Harry Gill, Syson's foreman, came in a naptha launch, —which belonged to the Syson Company,—to where the timber was stored in the lake, and claimed it as belonging to Syson; that plaintiff notified him that the property was in litigation; that Syson had entered suit for it, and that while that suit was pending, he, Gill, could not

take possession of the timbers, and plaintiff proposed to hold them until that trial. "Then (employing witness' own language) apprehending that they might bother me again about it, I hired tugs and negroes and rafted it up, and put it in condition, and towed it out of Chickasaw-bogue and up Mobile river into Bayou Sarah, and up the McKeon creek, where it would be close to my house, where I could watch it closer, and it stayed there until the litigation ended".

That Harry Gill was the man who committed the trespass; that he did it for the defendant company; and not for himself (though the evidence as to this is somewhat in conflict) cannot be reasonably disputed. Lasseter had no claim to the property, nor did the plaintiff owe him anything. He was simply sent by plaintiff, as appears, to the owner of Wiggins lake to rent the same from her for the plaintiff, and yet, we find him, as the evidence tends to show, setting up a claim to the logs and timber in the plaintiff's boom, and transferring the same to Gill. The evidence tends to show that this was done by procurement of the defendant company.

The defendant asked the affirmative charge, predicated on the proposition; first, because it was alleged in the complaint that the trespass was to a boom in Chickasaw-bogue creek, and the proof was, that it was in Wiggins lake, and this constituted a variance; and, second, because, as defendant insists, there was no testimony in the record tending to show that Harry Gill acted in the trespass on behalf of defendant company. As to the first of these suggestions,—adverse to sustaining it,—it is sufficient to say, that the plaintiff's boom, according to the evidence, was across the north of Wiggins lake. This lake was an inlet forming a part of the creek. C. C. Dickens testified, that the "lake is a branch off from Chickasaw-bogue creek, and up in the head of it, there are two prongs, one of them to the right, where this boom was, is wholly within a piece of land that belongs to a colored woman named Victoria Bernard." He was asked, "Is or is not, Wiggins lake, or the body of water spoken of as Wiggins lake, a part of Chickasawbogue creek?" His

answer was, "Yes, sir. It is a branch of Chickasafbogue creek."

Second, the testimony may be susceptible of some doubt, as above stated, as to whether Gill, when trespassing on plaintiff's boom, represented himself or the defendant company, but the testimony does tend most strongly to show that he was acting for the company. Under these conditions, the general charge, as to this contention, could not be given.

The plaintiff testified, that his boom was all broken up and eleven of the logs worth $3.00 each were lost; that the raft had been broken and loosened up and was otherwise in a bad condition ;that it cost him $45.00 to have it put in condition, which was as cheap as it could be done. He was asked by his counsel, "Now did you have any person to watch it until you could carry it off?" and the witness answered, "Yes, sir, we were there a week rafting on it. I had four or five men rafting on it, and watching it there night and day, and that cost me thirty dollars." After the answer, the defendant objected to the statement that it cost him $30.00, on the ground that the cost of watching the timber is not a proper element of damage, and because it is not relevant and material. If the objection did not come too late, it may be said this was a step for the preservation of the property, necessary to prevent further damage. It was plaintiff's duty to use all reasonable means to reduce the damage to the property as much as possible, and the reasonable cost in so doing, constitutes a part of the reasonable property damage.

The witness then testified, that "apprehending that they might bother me again about it, I hired tugs and negroes and rafted it (the timber) up and put it in condition and towed it out of Chickasawbogue creek and up the McKeon creek, where it would be close to my house, where I could watch it closer, and it stayed there until the litigation ended and then I sold it."

The plaintiff's attorney then stated to the court, "that he offered to show what it would cost to carry the logs to a place of safety," and then asked the witness the following question: "Now then, what did it cost you to

carry them to a place of safety?" and to this question the defendant objected, because it called for evidence which was not material and relevant, and also because it is not a proper element of damages, and because it called for the conclusion of the witness, which objections the court overruled, and to this action of the court, the defendant excepted." The attorney for the plaintiff then stated, "that this was not offered for the purpose of claiming the amount of the cost," and the witness answered the question as follows, viz: "It cost me $165.00 to put them where I did." The defendant moved to exclude the answer because it was not responsive to the question ,and was incompetent and irrelevant evidence, which motion the court overruled and defendant excepted.

There was no evidence that the place to which the plaintiff removed the property, was safe or the safest, convenient place to which it could have been removed, at the least expense. The evidence of the plaintiff tended to show, that the place was near his home, where he could watch it closer, and it may have been there safe from further trespass. This was about twenty miles away from the boom from which it was removed in Chickasawbogue creek, and the removal was done, as shown, at very considerable expense.

The answer of witness was not responsive to the question asked, and it is difficult to see, and we have not been able to ascertain, why this proof was made, if the amount of cost of removal of the timbers was not to be taken as an element of damage for the trespass. It is true, the attorney in offering the evidence, stated that this was not offered for the purpose of claiming the amount of the cost. If not, to what proper issue in the case did the proof apply? If speculative or sentimental, in that the property was taken near plaintiff's house, it had no such application.

The same may be said as to the next item of proof, immediately following the cost. Counsel for plaintiff asked the witness, "Now, Mr. Dickens, I will ask you how much it would have cost you to have returned them (the tim-

bers) to the place from which they were taken?" and he replied, about $25.00. There was no evidence introduced of a purpose to return the property to Chickasawbogue creek, whence it was taken, or that it had been so returned, and the question called for evidence not within the issues; and apparently irrelevant and speculative.

The assignments of error from 9 to 16, inclusive, relate to the same thing and may be considered together. They all relate to the plaintiff's title to the timber to which it was claimed the injury had been done, or which had been taken out of plaintiff's boom and removed to and placed in the one belonging to the defendant.

It was shown that the defendant company, at the fall term 1902 of the circuit court of Mobile county, had brought a suit against the plaintiff for a conversion of this timber, and a verdict had been rendered, after a trial upon the merits of the cause, in favor of the present plaintiff, against the defendant, the plaintiff in that suit. It is well understood that a former recovery in trover, with satisfaction, is a bar to an action of detinue between the same parties for the same property.—*Thomason v. Odum*, 31 Ala. 108, 68 Am. Dec. 159; *Patton v. Hanner*, 33 Ala. 307. Moreover, trespass is an action for an injury to the possession and not necessarily for an injury to the title ,and one who has the rightful possession of property the legal title to which may be in another, may maintain an action for trespass on the property.—*Cook v. Thornton*, 109 Ala. 523, 20 South. 14; *Dunlap v. Steele*, 80 Ala. 424. The possessor of personal property is prima facie the owner, and the presumption of ownership arising from it is not disputable by a trespasser, who does not connect himself with the true title. There was no effort to do such a thing by defendant in this case.—*A. G. S. R. Co. v. Jones*, 71 Ala. 493. It follows that these assignments of error are unavailing to defendant.

Attorney for defendant asked the witness, Dickens, "I am going to ask you, how long it was after you got the timber tied up there at what you call Syson's boom, *that turned out simply to be land*, how long was it after that before you got up to McKeon's creek, where you

claimed to have taken it, how many days?" The plaintiff moved to strike out of the question that portion of it, which we have italicized above. This may not have been the proper way of avoiding the obectionable part of the question, since defendant had the right to frame its question to suit itself, and it was the province of the court to pass on it as presented. The court granted the motion and defendant excepted. The question then, with those words stricken, was allowed to stand and be answered. The stricken words constituting a mere assertion of a fact, which counsel in propounding the queston, had no right to assume as true. There was nothing in the case to which this statement was material, and if it was a fact, it should have been shown by some testimony and not by the mere assertion of counsel. If there was error here it was error without injury.

The plaintiff introduced the record of a suit, above referred to, by the defendant against the plaintiff for the conversion of the same property for the trespass on which this suit is brought, showing that after trial on the merits, the verdict and judgment were for the defendant, the plaintiff here. Counsel for defendant objected to the record as evidence (employing his language), "because it is not material and relevant to the issues in this case, and because it did not determine the title to the timber, as plaintiff claims it did, and which objection of the defendant to the said record the court overruled, and admitted said record as offered on the showing to the court," and defendant excepted. This record was offered for the purpose of showing res adjudicata between the plaintiff and the defendant, as to the plaintiff's title to the property in question.—*Crowder v. Red Mountain Mining Co.*, 127 Ala. 260, 29 South. 847. The title thereto was, perhaps, not important if the trespass was upon the plaintiff's possession, but because as we have seen, the defendant's counsel made the persistent effort to question plaintiff's title to the property. The court sustained plaintiff's objection to the evidence defendant sought to introduce for that purpose, which ruling it now seeks to review. This evidence was competent as

[Wood, et al v. West Pratt Coal Co.]

we have before stated, as sustaining the rulings of the court on that question.

The foregoing covers consideration of the errors assigned, and for the errors indicated, the judgment of the lower court is reversed and the cause remanded.

Reversed and remanded.

WEAKLEY, C. J., and DOWDELL, and DENSON, JJ., concur.