# Ryan v. Couch.

## Action on Sheriff's Official Bond.

1. *Putting witnesses under rule.*— In excluding witnesses from the court-room during the examination of others, whether on request, or *ex mero motu*, the court exercises a sound judicial discretion, which is not revisable on error or appeal; but the rule should never be applied to the exclusion of a party to the suit, who has a constitutional right to be present during the trial; nor should it be applied to the exclusion of an agent, when it is made to appear to the satisfaction of the court, by the statement of counsel in open court, or otherwise, that, on account of his intimate knowledge of the facts, his services are required by counsel in the management of the trial, especially in the necessary absence of his principal.

2. *Execution; expiration of sheriff's term of office, after levy, and before sale.* When a sheriff has levied an execution on personal property, it is his duty to make the sale notwithstanding the expiration of his term of office since the levy, and he can not discharge himself from liability by delivering the execution to his successor in office: the statute requiring official books, papers, &c. to be delivered by an officer to his successor (Code, § 206), does not apply in such case.

3. *Construction of statute* —When a statute is equally susceptible of two constructions, one of which is in harmony with a settled principle of the common law, and the other in abrogation of it, the courts will adopt the former.

APPEAL from the Circuit Court of Marshall.

Tried before the Hon. LOUIS WYETH.

This action was brought by Samuel F. Ryan, against Ezekiel Couch, late sheriff of said county, and the sureties on his official bond; and was commenced on the 27th April, 1878. The official bond of said Couch, which was set out in the complaint, was dated the 10th November, 1874, and was conditioned as prescribed by the statute (Code, § 163). The breach assigned in the complaint was the sheriff's failure to take a sufficient replevy bond in an attachment case, or to

[Ryan v. Couch.]

make the money on an execution which had come into his hands, in favor of the plaintiff, against one Charles J. Rallings and others, and which he had levied on certain personal property, and also on a tract of land. The complaint alleged that, on the 6th April, 1877, the plaintiff sued out an attachment for rent against said Rallings, claiming $517 as due for rent of land during the year 1876; that the attachment was placed in the hands of said Couch as sheriff, and was by him, through his deputy, one James T. Sparks, levied on a certain quantity of corn and fodder, part of the crops raised on the rented lands; that said property was replevied by the defendant in attachment, by giving bond, conditioned for the forthcoming of the property, with Pleasant Rallings and Y. M. Howard as sureties; that the plaintiff recovered judgment in the attachment suit, on the 13th September, 1877, for $545.64, besides costs; that the replevy bond was returned forfeited by the sheriff, and thereupon an execution was issued, on the 30th October, 1877, against all the obligors, and was levied on the next day by the said Couch as sheriff, by his said deputy, on certain corn and cotton, the quantity of which was specified, and certain mules, as the property of said Charles P. Rallings, and also on several mules and horses, the property of said Pleasant Rallings and Howard, and a tract of land belonging to said Pleasant Rallings. The levy, as indorsed on the execution, was set out in the complaint, with the return on the execution by Ira D. Lucas, the succeeding sheriff, which stated that, on the 7th January, 1878, after giving legal notice, he had sold the corn and cotton levied on, at a specified price, to Charles J. Rallings, and received from him $48, the aggregate sum of the bid; that the personal property levied on as belonging to Pleasant Rallings was not sold, because he had interposed an affidavit and claim of exemption, which was returned with the execution; and the return then continued thus: "The other personal property, described as having been levied on as the property of Y. M. Howard and Charles J. Rallings, was not delivered to me on the day of sale, the 7th January, 1878; nor was there delivered to me by the former sheriff, making said levy, a bond from the said Howard and Rallings to enforce the delivery of said personal property."

The complaint then alleged, that it was the duty of said Couch, having levied said attachment, to take a bond with good and sufficient sureties for the forthcoming of the property; that Howard and Pleasant Rallings were not good and sufficient sureties when they were accepted as such by the sheriff; that it was the duty of said sheriff, also, to have sold under the execution on the forfeited bond all the personal

property on which it was levied, or to have shown some sufficient and legal excuse for not doing so; "but, nevertheless, the said Couch, as such sheriff, having levied said execution upon said property, which was the property of said defendants in execution, wholly disregarding his duty in said behalf, entirely *failing* and *neglecting* to sell the same, or any part thereof, under said execution, or to assign any cause or excuse for such failure; but, on the contrary, said Ezekiel Couch, while he was so acting as such sheriff, and was in fact sheriff as aforesaid, released and discharged said levy of said execution on said property, without any cause or authority whatever; to plaintiff's damage," &c. The defendants pleaded—1st, that said Couch, as such sheriff, did faithfully and completely do and discharge all the duties which devolved upon him as such sheriff, during his continuance in office, and especially in the case in which the breach of such duty is averred in the complaint"; 2d, "that said supposed failure to make the money on said execution, as averred in said complaint, was because he was ordered and directed to withhold the sale of the property levied on, by the *sheriff(?)* in said execution, or by his agent acting for him in the premises"; 3d, "because there was no judgment against said defendant in attachment, upon which an execution could legally issue." Beneath these pleas, as set out in the transcript, are the words, "Replication and issue to all the pleas," to which are signed the names of plaintiff's attorneys.

"On the trial," as the bill of exceptions states, "the defendants asked that the witnesses be put under the rule, which excludes them from the court-room during the trial; which was granted. The defendants' counsel then discharged all the plaintiff's witnesses from the rule, except John Ryan, and remarked, that they had accomplished their object. Plaintiff's counsel then stated to the court, that the plaintiff himself was not present; that he was quite a young man, about twenty-three years old, resided in Jackson county, and was absent from the State, at school, when this suit was brought, and only returned last June; that said John Ryan, the witness, was his father and agent, and was superintending this suit; that it was necessary to the *allowment* of a fair trial that said John Ryan should be present, to aid his counsel in conducting the examination of witnesses; that he knew more of the facts of the case to be drawn out from the witnesses, than the plaintiff himself knew if he were here present; and the counsel asked the court to permit said John Ryan to remain in court, for plaintiff's counsel to counsel during the examination of the other witnesses." On objection by the defendants, the court refused to discharge said Ryan from the rule,

[Ryan v. Couch.]

and excluded him from the court-room; to which ruling and refusal the plaintiff excepted.

"In the progress of the trial, the plaintiff read in evidence an execution in the words and figures following," setting out the execution issued on the forfeited bond, with the levy thereon indorsed; after which, the bill of exceptions proceeds thus: "and also believed the value of the property to be more than sufficient to satisfy said execution; and further proved that, when said levy was made by said Sparks, so indorsed on said execution, the personal property so levied on was left by the sheriff in the possession of said defendant in execution, and not taken into the possession of said sheriff. The defendants then introduced J. T. Sparks as a witness, who proved, that he was the legal deputy of said Couch, who was then the sheriff of said county of Marshall, and made the levy indorsed on said execution, on the day the same bears date; and that on the 7th day of November, following the date of said levy, the said execution was taken out of his hands by said Couch, his term of office as deputy having expired." To the introduction of this testimony the plaintiff seems to have objected, "because the same was illegal, incompetent, and irrelevant," and he excepted to the overruling of his objections.

"The defendants then introduced as a witness said Ezekiel Couch, one of the defendants, and proposed to prove by him that his term of office as sheriff expired on the 7th day of November, 1877, and that Ira D. Lucas, his successor in said office, duly elected, who gave bond and was qualified, demanded of him, on said 7th day of November, 1877, the office of sheriff, and the books, papers and property thereunto belonging; and that on said demand of said Lucas, on that day, he delivered up said office, together with all the books, papers and property belonging to said office, which were in his hands, and, among others, the said execution hereinabove copied. To the introduction of this testimony the plaintiff objected, because it was illegal; and because said witness, as the outgoing sheriff, could not legally deliver the said execution to his successor in office, but it was his duty to execute and return it according to its mandate; and because his handing it to his successor in office could not excuse him for not selling the property levied on, nor for not taking it into his possession when he made the levy." The court overruled these objections, and permitted the evidence to go to the jury; to which rulings exceptions were reserved by the plaintiff. "Thereupon, the court ruled, that it was the duty of said Couch, the out-going sheriff, to deliver to the in-coming sheriff, on demand, the execution offered in evidence in this case,

and, if he did so deliver it, this discharged him from all liability to said plaintiff for not further executing the same ; to which ruling the plaintiff excepted."

In consequence of these adverse rulings of the court, the plaintiff was compelled to take · a nonsuit, which he now moves to set aside, assigning as error the several rulings of the court to which, as above stated, he reserved exceptions.

W. B. MARTIN, for appellant.

JNO. W. A. SANFORD, *contra.*

SOMERVILLE, J.—The examination of witnesses in cases, civil or criminal, is, in a great measure, necessarily under the control of the presiding judge, and subject to a just, wise, and sound judicial discretion. If he deem it necessary, in order to elicit the truth, and promote justice, he may, *proprio motu,* or on the application of either party to the suit or proceeding, order all the witnesses, except the one under examination, to leave the court. This practice is believed to be coeval with judicature, having long been administered in the British Parliament, and the courts of both England and Scotland. When requested by counsel, or parties, though not a matter of right, the order is rarely withheld.—2 Best on Ev. § 636 ; 1 Greenl. Ev. § 432.

But it is obvious that this rule of exclusion ought never to be applied, so as to debar a party to a suit from being present during the progress of his cause. ˙ He has a right to be present, for the purpose of aiding and instructing his counsel in prosecuting or defending his suit. To order him from the court-room, while his case is in process of judicial investigation, would be violative of the spirit, if not the .very letter of the Declaration of Rights, which declares that " no person shall be debarred from prosecuting or defending, before any tribunal in this State, by himself or counsel, any civil cause to which he is a party."—Const. Art. 1, § 11 ; 2 Best on Ev. § 636 ; 1 Greenl. Ev. (Redf. Ed.) § 432, *notes* 1 and 3.

It was within the sound discretion of the court below to place the witness, John Ryan, under the rule ; and, although we should be of opinion that this discretion was not exercised in furtherance of justice, it is not a revisable error, subject to review by the appellate court.—1 Greenl. Ev. § 431.  In view, however, of the practical importance of the question raised, and by the request of appellant's counsel, we deem it proper to indicate the correct rule of practice in cases of this character. Where a judge is satisfied, from the statement of counsel in open court, or otherwise, that a witness in a cause

[Ryan v. Couch.]

has acquired such an intimate knowledge of the facts, by reason of having acted as the authorized agent of either of the parties, that his services are required by counsel in the management of the trial, he ought not, especially in the necessary absence of his principal, to be placed under the rule. All rules of court are to be subordinated, in their construction and application, as far as possible, to securing the strict administration of that "right and justice," which are prohibited by the constitution to be made the subject of "sale, denial, or delay."—Const. Art. 1, § 14. "*Applicatio est vita regulæ.*"—Pel. Leg. Max. 18. To exclude such a one from the valuable privilege of consultation with the attorney of his principal, during the progress of a trial, is not required by the reason of this rule of evidence. The sounder and better practice is to permit him to remain in the court-room.

2. The Circuit Court erred, in ruling that it was the duty of the appellee, Couch, to deliver the execution, which was in his hands, to his successor in the office of sheriff, upon demand by the latter. The execution had been received by Couch in his official capacity as sheriff, and before the expiration of his term of office. Notwithstanding such expiration, it was his duty to proceed to execute the levy, which he himself had made, at least so far as concerned the personal property.

The lien acquired by the levy of the execution was plainly not affected by the replevying of the property, and the giving of the forthcoming bond by the defendants in execution. *Campbell v. Spence*, 4 Ala. 543 ; Freeman on Executions, § 207. The levy in question was made before the expiration of Couch's term of office, and he acquired a special property in the personal property levied on under the writ. As said by the Supreme Court of Maryland, in a similar case, " an execution being an entire thing, he who begins must end it."—*Purl's Lessee v. Duvall*, 5 Har. & J. Rep. 69.

In Freeman on Executions, § 291, it is said : " The officer who commences, must usually complete the execution of the writ. His term of office may expire after the levy, and before the sale. This does not terminate his authority, nor even confer upon his successor power to make the sale if the *venditioni exponas* should be directed to him."

Such has, also, been the view taken by this court in its past adjudications.—*Leavitt v. Smith*, 7 Ala. 175 ; *Bondurant v. Buford*, 1 Ala. 259 ; *Dennis v. Chapman*, 19 Ala. 29. We think the sounder rule, however, is to confine this principle to levies on personal property. Such levies invest the officer making them with a special property in the goods, which are thereby brought into his temporary custody. Personal prop-

erty is, besides, more perishable in its nature. On this ground, a distinction may be properly made, which would permit a *venditioni exponas*, issued after the expiration of the term of the officer making the levy, to be executed, in such a case, by his successor.—Freeman on Ex. §§ 62, 291 ; *Holmes v. McIndoe*, 20 Wisconsin, 657 ; *Bank of Tennessee v. Beatty*, 3 Sneed, 305.

We do not think this view of the case is affected by sections 206 and 3190 of the Code of 1876. Section 206 provides, that "in all cases, in which *it is not otherwise expressly provided*, when any office is vacated, except by the death of the incumbent, all books, papers, property and money belonging or appertaining to such office, must, on demand, be delivered over to his qualified successor." Section 3190 provides what shall be the duty of a sheriff receiving an execution : "He *must execute the writ with diligence*, and, if practicable, *perform the mandate thereof*, and make return of his acts to the clerk, three days before the first day of the return term of the writ."

The decisions of this court, and the recognized principles of the common law, touching the duties of sheriffs, superadd vitality to this statute, and are in perfect harmony with its letter and spirit. It comes within the exceptions intended to be engrafted on section 206 by the law-making power.

We assume it as a safe rule, that even when a statute is equally susceptible of two constructions, one of which is in harmony with a clearly settled principle of the common law, and the other is in abrogation of it, courts will adopt the former and not the latter.

The Circuit Court erred in giving the charge excepted to by appellant, as also in admitting the testimony of Ezekiel Couch, to which objection was taken.

Reversed and remanded.