# Chaney *et al.* v. Burford Lumber Co.

*Action for Breach of Constable's Bond.*

[Decided January 21, 1902.]

1. *Sale of personal property by constable under venditioni exponas from justice of the peace; legality of.*—An order of sale issued by a justice of the peace to a constable, for sale of personal property remaining in his hands unsold at the return day of the execution, is not authorized by any statute and confers no authority on the constable.

2. *Return of execution by constable, effect of.*—When a constable has returned an execution after its levy, he ceases to have any control over it or authority under it.

3. *Sales; bona fide purchaser, rights of.*—Where a constable, having personal property in his possession under a levy, by plaintiff's direction allows it to be removed by the defendant in execution to another precinct, and defendant there sells it for a fair consideration, the purchaser, having no notice or knowledge of any claim or right to the property by plaintiff in the execution, acquires the title of defendant thereto, unaffected by plaintiff's claim.

4. *Constable as trespasser; justification under process.*—A constable who takes control of property, under an order of sale issued by a justice of the peace without authority, and after he has returned an execution which he has levied on the property, is a trespasser, and is not protected by said order of sale or said execution.

5. *Trover and conversion, when constable and his sureties liable for.*—A constable and the sureties on his official bond are liable for a conversion, where the constable takes control of personal property under an order of sale, which has been issued without authority, and allows the defendant in execution to remove the property to another precinct and there sell it.

[Chaney *et al.* v. Burford Lumber Co.]

APPEAL from Jackson Circuit Court.

Tried before Hon. A. H. ALSTON.

This was an action by the Burford Lumber Company against C. V. Chaney and the sureties on his official bond as constable, for conversion by him of certain lumber. The evidence showed that plaintiff bought the property from the defendant in the execution, one Wilbourn, after the levy of execution thereon, but without notice of the execution, and after Wilbourn had removed the property to another precinct. Chaney thereafter levied on the property under certain orders of sale which had been issued by the justice of the peace. The circuit court gave the general affirmative charge for plaintiff, and refused to give the following charges requested by defendants, viz.: (1.) "If the jury in this case believe the evidence as to the levy of the execution and order of sale, and further believe that Chaney, the constable, nor the plaintiffs in the execution never released the liens, then they should find for the defendant." (2.) "If the jury believe the evidence they should find for the defendant."

From a judgment for plaintiff defendants appeal.

J. E. BROWN, for appellants, cited Code, §§ 1938, 2664, 2673, 1945; 77 Ala. 580; Herman on Executions, pp. 257, 258, 271, 272, 283; 2 Freeman on Executions, p. 271, 283, 826.

MARTIN & BOULDIN, *contra,* cited *Inman v. Schloss,* 122 Ala. 461; *Bolling v. Kirby,* 90 Ala. 215; 24 Am. St. Rep., pp. 795-819, note; *Henderson v. Foy,* 96 Ala. 205; *Freeman v. Scurlock,* 27 Ala. 407; 26 Am. & Eng. Ency. of Law, (1st ed.), 762, 851-3; *Wood v. Gary,* 5 Ala. 43; *Patton v. Hayter,* 15 Ala. 18; *Albertson v. Goldsby,* 85 Ala. 711; *Burnham v. Martin,* 54 Ala. 189; *May v. Carlisle,* 68 Ala. 135; *Campbell v. Spence,* 4 Ala. 543; *McCullock v. McClintock,* 88 Ala. 567; Freeman on Executions, 260-271.

HARALSON, J.—1. Two judgments were obtained in the justice's court against L. D. Wilbourn, one on

the 19th February, 1894, for $86.75, besides costs, and the other on the 16th November, 1895, for $90.79 and costs. On these judgments executions were issued by J. M. Thompson, J. P., on the first judgment in favor of Coffey & Gould, on the 13th of October, 1899, returnable on the 13th of December, thereafter, and on the second, in favor of Smith Sons Gin & Manufacturing Co., on the 23d of December, 1899. Both these executions coming to the hands of the constable, were levied the same day,—the 3d of November, 1899,—on personal property of the defendant in execution, L. D. Wilbourn, viz., 30,-000 feet of poplar lumber and 20 logs, the same being at Boozer's mill. Both executions were returned by the constable to the justice, one, on the 12th and the other on the 22d December, 1899, the one endorsed "Returned for want of time to sell the above property. Issue an order of sale;" and the other, "Returned for an order of sale, to sell the above property under," each writ returned one day before the return day thereof. The justice issued an order of sale of the property, one dated the 12th, and the other the 23rd of December, 1899, in form as provided by section 1913 of the Code, issued by clerks of the circuit court to sheriffs, when goods levied on remain in their hands unsold.

We find no provision in the statute for the issuance of such an order of sale by a justice of the peace to a constable, when personal property remains in his hands unsold at the return day of the execution. It was held in *Mitchell v. Corbin,* 91 Ala. 599, that "The statute does not provide for the issue of a *venditio exponas,* on the return of an execution issued by a justice of the peace and levied on personal property remaining unsold, but only when land is levied on, and its sale is ordered by the circuit court, or court of like jurisdiction.—Code (1886), § 3362, of 1896, § 1950. In the absence of a statute an officer levying an execution on personal property acquires a right of possession and a special property. This right of possession and special property and the duration of the lien after the return day, confers on the officer making the levy authority, notwithstanding the return day may have passed, to sell the property.—*Ryan v. Couch,* 66 Ala. 244; *Bondurant*

*v. Buford*, 1 Ala. 359; *Bruister v. Gavin*, 127 Ala. 317; 2 Freeman on Ex. § 202.

These orders of sale by the justice, therefore, were of no avail, conferring no power on the constable, in addition to what he already had under the executions.

2. The constable returned the executions to the justice's court whence they issued, and no executions were issued thereafter, so far as appears. The levy of the executions, in the first instance, on the property described in them, created a lien on this property, which might have been continued under the writs after they were returned to the justice, as long as they were regularly issued and delivered to the officer making the levy, without the lapse of a term. But no alias ever having subsequently issued after the return of the writs, and a term having lapsed, the lien was lost.—Code, § 1892; *Collier v. Wood*, 85 Ala. 92; *Carlisle v. May*, 75 Ala. 502; *Perkins v. Brierfield Co.*, 77 Ala. 403. By statute, justices of the peace must designate certain days, at least once a month, and appoint a particular place within their precincts for the trial of civil cases. Code, § 2666.

These executions, as we have seen, were issued on the 13th October, and 16th November, and were returnable on the 13th and 23d December, 1899, respectively. It may be, if the constable had not returned but held these writs, for the purpose of making sales under them, the liens of the plaintiffs might have been preserved.—*Ryan v. Couch, supra; Bruister v. Gavin, supra;* Code, § 1938. But this question we need not decide. When the constable returned the executions after this levy, they ceased to be under his control, or furnish him any authority to act under them. The writ, on being returned, even before the return day, becomes *functus officio*. Or, as elsewhere expressed, "Whenever process is returned to the proper court, or its return day has passed, it ceases to have any effect, its mandate having been performed, and if the plaintiff wishes to proceed further, additional proceedings must be had."—*Brown v. Baker,* 9 Port. 503; *Waldrop v. Friedman*, 90 Ala 157; 11 Am. & Eng. Ency. Law (2d ed.), 648-9.

The evidence shows, without conflict, that the property was allowed by the constable, after the levy, and by direction of the plaintiff's attorneys, to be removed by the defendant, from the place at which it was levied, at Boozer's Mill, in one precinct, to Langston, in another beat, and while there, in his possession and apparent undisputed ownership, it was sold and delivered by him to the plaintiff in this action,—the Burford Lumber Co,—on the 26th February, 1900. The evidence also shows, without conflict, that the plaintiff purchased in good faith, without knowledge or notice of any asserted claim or right to the property, by the plaintiffs in said executions, and paid to the defendant what appears to have been a fair cash consideration for it. Under these conditions, he acquired the title of defendant to the property, unaffected by any supposed or asserted right thereto of the plaintiffs in said executions.—Herman on Executions, §§ 182, 328, 330, 338; 2 Freeman on Ex., §§ 260, 261, 262; *Inman v. Schloss*, 122 Ala. 461.

3. After the sale and delivery of the property to the plaintiff in this suit, by the defendant in executions, the evidence shows, without dispute, that the constable committed a trespass on the property. He testified that he never made but the one levy under the executions; that the property has been in his possession under the executions previous to the issuance of the orders of sale, and he took control of the lumber under these orders after he received them. These afforded him no protection, nor did the original executions which he had returned and which were, on that account, at least, *functus*. Furthermore, he also testified, that the property levied on had been advertised by him for sale under the executions while they were in his hands, which sale was stayed at different times, and, finally, indefinitely by plaintiff's attorneys. As he expressed it, "So it rocked along, postponed at different times until November, when the lumber was removed by defendant in executions, Wilbourn, from Boozer's Mill to Langston." As we have seen, it was there sold by him to the plaintiff for value, and without notice. Under the most favorable view to be taken for defendant, these and other facts in the case would constitute an abandonment of the lien of the ex-

ecutions, if any existed, or its postponement to the rights of the plaintiffs as *bona fide* purchasers of the property.—*Albertson v. Goldsby*, 28 Ala. 711; *Burnham v. Martin*, 54 Ala. 189; *Bates v. Bailey*, 57 Ala. 73; *A. G. L. Ins. Co. v. McCreary*, 65 Ala. 127; *Chandler v. Henry*, 90 Ala. 271; *Inman v. Schloss, supra.*

Viewed in any aspect we may, it appears that the general charge for the plaintiff was properly given, and the two charges, 1 and 2, requested by defendants which are alone assigned as error were properly refused.

There was an exception to the ruling of the court in refusing to rule out all the plaintiff's evidence, and this ruling is assigned as error, but not insisted on in argument of counsel. No question was raised as to the measure of damages.

Affirmed.