### LEWIN v. TELLURIDE IRON WORKS CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 25, 1921.)

No. 5510.

1. **Landlord and tenant ⇐240—Lease held to give equitable lien for rent and taxes.**

A lease, which provided that all improvements erected on the premises by the lessee should be bound for the payment of rent and of taxes which the lessee agreed to pay, fastens an equitable lien for the rent and taxes in favor of the lessor and its successor in interest upon improvements so erected.

2. **Bankruptcy ⇐188(1)—Trustee's rights to property held subject to lien in favor of lessor.**

Where improvements placed by the bankrupt on a leased mining claim were seized on execution before bankruptcy and never came into possession of the trustee, so that they were not within the first portion of Bankruptcy Act, § 47a(2), as amended by Act June 25, 1910, § 8 (Comp. St. § 9631), the trustee had, under the latter portion of that section, only the rights of an execution creditor to such property which, under Rev. St. Col. 1908, §§ 3609, 3626, gave the trustee no lien on the property, whether it was real or personal, so that the lien of the lessor, transferred to the execution creditor, was superior to the rights of the trustee who, under Bankr. Act, § 70a (Comp. St. § 9654), had only the rights of the bankrupt.

3. **Bankruptcy ⇐290—Assignment of landlord's lien held defense to existing action against person in possession of property.**

Where a purchaser of property at execution sale, which was void because made within four months of the petition in bankruptcy against the debtor, acquired, after action was brought against him by the trustee in bankruptcy for the property, the lien of the bankrupt's lessor on the property sold at execution, he could assert that lien as a defense to the trustee's action.

4. **Mines and minerals ⇐70(5)—Lease held to impose lien on machinery in mill erected by lessee; "Improvements."**

Where lease of a mining claim contemplated the erection thereon by the lessee of a stamp mill and gave the lessor a lien on the improvements erected on the claim by the lessee, such lien covered, not only the build-

ing erected to house the mill, but also the machinery, tools, and other equipment essential to an operative stamp mill.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Improvement.]

**5. Contracts ⊂⊃147(1)—Intention of parties prevails unless contrary to binding terms.**

The intention of the parties to a contract, when manifest or when ascertained from their written agreement in accordance with the basic rules of interpretation, must prevail unless such intention is directly contrary to the binding terms of the contract.

**6. Landlord and tenant ⊂⊃254(3)—Lessor held not to have waived lien by permitting sale under execution.**

A lessor who had a lien on the improvements by lessee did not waive his lien as against the lessee or his trustee in bankruptcy by permitting the property to be levied on and sold under execution to satisfy a judgment against the lessee.

**7. Landlord and tenant ⊂⊃254(4)—"Estoppel" is indispensable element of waiver of landlord's lien.**

"Estoppel" is an indispensable element of a waiver, and estoppel does not exist unless there is ignorance by the party who invokes the estoppel, a misrepresentation by the other party, and a detrimental change by the party asserting estoppel in reliance upon misrepresentation, so that a landlord does not waive his lien by mere inaction which did not mislead the lessee or his trustee in bankruptcy as to the true situation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel.]

**8. Bankruptcy ⊂⊃198—Trustee held not entitled to recover amount bid at execution sale from one subsequently acquiring prior lien.**

In an action by trustee in bankruptcy for the value of chattels belonging to the bankrupt sold under execution within four months of the bankruptcy where the purchaser at the execution sale thereafter acquired the lien of the bankrupt's lessor on the property sold and asserted it as a defense to recovery by the trustee, the trustee is not entitled to recover from the purchaser the amount of his bid for the property, since the trustee represents the general creditors of the bankrupt whose acts invalidated the sale at which the bid was made.

Stone, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by Melvin R. Lewin, as trustee in bankruptcy of the Weller Mining & Milling Company, against the Telluride Iron Works Company and another. Judgment for defendants on directed verdict, and plaintiff brings error. Affirmed.

Ernest Morris, of Denver, Colo., for plaintiff in error.

H. R. Kaus, of Denver, Colo. (L. W. Allen, of Telluride, Colo., and L. F. Twitchell, of Denver, Colo., on the brief), for defendants in error.

Before SANBORN and STONE, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge. On May 3, 1918, the trustee in bankruptcy of the Weller Mining & Milling Company, a corporation, adjudged bankrupt on January 30, 1918, brought an action at law against the Telluride Iron Works Company, a corporation, to recover

of it $5,000, the alleged value of the building known as the Weller Stamp Mill, the shafting, wheels, pulleys, tools, and other appurtenances thereto, which the Weller Company had placed on the Union placer mining claim survey No. 737 while it was a lessee under a lease of that claim to it made on July 15, 1913, by the owner thereof, the San Miguel Consolidated Mining Company. The trustee alleged that the Telluride Company had taken and appropriated this building and its appurtenances to its own use when, at the time of the adjudication of the bankruptcy, they were the property of the Weller Company. The answer of the Telluride Company that is important here was that the lease of July 15, 1913, under which the Weller Company held the stamp mill, etc., provided that the lessor leased the mining claim to the Weller Company for 10 years "for the purpose of the construction and maintenance thereon of a stamp mill and such other buildings as may be required by" the Weller Company in connection with its mill operations, that the Weller Company would pay as rent for the premises $350 per annum and all taxes on the premises and on the improvements thereon, that it would pay double rent for every day it or any one else in its name should hold any part of the premises after the expiration or forfeiture of the lease, and that "all improvements erected on said premises by said second party (the Weller Company), or its assigns, or by any one who may claim under it or them, are bound for the payment of each installment of rent and for the county and state taxes and all other taxes and demands, as aforesaid, and for any arrears of rent or taxes"; that the Weller Company had erected the stamp mill and placed the pulleys, shaftings, and other property the trustee claimed to recover the value of, on the premises under this lease; that at the time of the Weller Company's adjudication in bankruptcy it owed the lessor $436.71 unpaid taxes and $1,700 unpaid rent; that the trustee had never intended or offered to pay these unpaid rents or taxes and had never assumed the lease or taken possession of any of the leased premises or any of the property in controversy; that on August 28, 1918, the then owner of the lessor's interest in the leased premises duly forfeited, in accordance with the terms of the lease, the lessee's interest in the leased premises and in the improvements and property here in controversy; and that thereafter on October 23, 1918, such owner sold, assigned, and conveyed to the Telluride Company the lessor's title and interest in the leased premises and in the building and improvements placed thereon by the Weller Company under the lease. There was a trial by a jury. At the close of the trial the evidence was conclusive that the building and its appurtenances, the pulleys, shafting, and other property in controversy were placed on the premises leased by the Weller Company and used by it under the lease as a part of the operative stamp mill and plant, that neither the trustee nor any of the officers of the court of bankruptcy had assumed the lease or taken possession of the leased property or premises, that there was due for taxes $476.71, and for unpaid rent $1,750, that before the Telluride Company acquired the lessor's interest in the leased premises, the lessor had forfeited the Weller Company's interest in the mill and ap-

purtenances under the lease, and that thereafter all the interest in and title of the lessor in the leased premises and in the stamp mill and property placed thereon by the Weller Company under the lease were duly conveyed to the Telluride Company, which had taken possession thereof. Thereupon the court below instructed the jury to return a verdict for that company, and the trustee excepted.

An examination of the record has convinced that the real questions here presented are: (1) Were the lien and title of the lessor to the building and property in controversy which were conveyed to the Telluride Company on October 23, 1918, prior in right or superior in equity to the claim of the trustee thereto? and (2) if so, was all the property in controversy subject to that lien and title?

[1] In Walker v. Brown, 165 U. S. 654, 662, 663, 669, 17 Sup. Ct. 453, 41 L. Ed. 865, the Supreme Court in effect adopted and made section 1235 of Pomeroy's Equity Jurisprudence the law of this land, at least in the federal courts. That section declares:

"That every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice." Pierce v. Nat. Bank of Commerce (8th C. C. A., opinion filed November 6, 1920) 268 Fed. 487.

The lease of July 15, 1913, evidences an equitable lien far within the definition here given, and it fastened such a lien for the rent and taxes in favor of the lessor and its successor in interest (the Telluride Company) upon the buildings and appurtenances placed upon the leased premises by the Weller Company to constitute, and used by it for the purpose of, the stamp mill described in the lease.

But counsel for the trustee argues: (a) That under the laws of Colorado, even if the lessor's lien was equitable and clearly granted by the lease and valid against the lessee, the Weller Company, it was invalid as to third parties under sections 512 and 521 of the Revised Statutes of Colorado 1908, which provide that no mortgage or other conveyance of personal property having the effect of a mortgage or lien upon such property shall be valid as against the rights of any third party unless possession of such personal property shall be delivered to and remain with the mortgagee or the said mortgage be acknowledged and recorded, citing Sioux Valley State Bank v. Honold, 85 Iowa, 352, 357, 52 N. W. 244; Ward v. Rippe, 93 Minn. 36, 37, 100 N. W. 386; Johnson v. Crofoot, 53 Barb. (N. Y.) 574; Mitchell v. Badgett, 33 Ark. 387, 396; Merrill v. Ressler, 37 Minn. 82, 33 N. W. 117, 5 Am. St. Rep. 822; McNeal v. Rider, 79 Minn. 153, 81 N. W. 830, 79 Am. St. Rep. 437; Clark v. Bright, 30 Colo. 199, 69 Pac. 506. (b) That under section 70a(5) of the Bankruptcy Act (9 U. S. Comp. Statutes, § 9654), the stamp mill and appurtenances were property, which, prior to the filing of the petition in bankruptcy, the bankrupt could by any means have transferred, or which might have been levied upon and sold

under judicial process against him, so that the trustee was vested with the title of the bankrupt as of the date he was adjudged a bankrupt by operation of law. (c) That under section 47a(2) as amended by the Act of June 25, 1910, § 8 (9 U. S. Compiled Statutes, 1916, § 9631), which provides that "trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied," the stamp mill and the appurtenances were, upon the filing of the petition, in the custody or coming into the custody of the bankruptcy court, and the trustee had the rights and remedies of a creditor having a lien thereon by legal or equitable proceedings. And (d) that therefore the lien and title of the trustee was superior to those of the lessor.

[2] But the third person of the Colorado statute is not one who stands in the shoes of the mortgagor, but a purchaser or lienor for value without notice, or one in some such situation. Beatrice Creamery Co. v. Sylvester, 65 Colo. 569, 179 Pac. 154, 155; Groce v. Phœnix Insurance Co., 94 Miss. 201, 48 South. 298, 299, 300, 22 L. R. A. (N. S.) 732; Green & Sons v. Weems et ux., 85 Miss. 566, 38 South. 551; Morse v. Morrison, 16 Colo. App. 449, 452, 66 Pac. 169; Puzzle Mining & Reduction Co. v. Morse Bros. Machinery Co., 24 Colo. App. 74, 79, 80, 131 Pac. 791. The trustee here stands in the shoes of the bankrupt lessee and had no higher or better right than it unless such higher or better right was vested in him by section 47a as amended by the Act of June 25, 1910, just quoted. Unless that grant has such an effect, the equitable lien and the title under it of the lessor and its assignees are prior in right and superior in equity to any title or right of this trustee. In the absence of such an express grant, the trustee takes the bankrupt's property subject to all rights and equities existing in favor of third persons against the bankrupt. York Mfg. Co. v. Cassell, 201 U. S. 344, 352, 26 Sup. Ct. 481, 50 L. Ed. 782; Hurley v. Atchison, T. & S. F. Ry. Co., 213 U. S. 126, 130, 132, 133, 134, 29 Sup. Ct. 466, 53 L. Ed. 729; Root Manufacturing Co. v. Johnson, 219 Fed. 397, 406, 135 C. C. A. 139; In re Sherwoods, Inc., 210 Fed. 754, 760, 127 C. C. A. 304, Ann. Cas. 1916A, 940. But under the facts of this case section 47a as amended has no such effect because at the time of the filing of the petition in bankruptcy, and thereafter to the present day, the property in controversy was not in the custody of and was not coming into the custody of the bankruptcy court. On the other hand, it was neither in the possession of the bankrupt nor of the trustee, nor of any other officer of that court, and it has never come and doubtless never will come into the possession or custody of any of them. When the petition was filed the property had been seized and sold by the sheriff under an execution against the bankrupt and was in the possession and control of the Telluride Company or its successor in interest, held by them subject to the lien of the lessor of the mining claim. The trustee never reduced the property to possession but elected

to sue the Telluride Company for its value. It was when the petition in bankruptcy was filed and it has ever since been in the possession and control of a party or parties claiming it adversely to the bankrupt and to the trustee, adversely to the bankruptcy court and to its officers. It fell, therefore, in the second class of property described in section 47a as amended. It was property not in the custody of the bankruptcy court and not coming into its custody, and the only rights and remedies regarding it which the trustee had were those of a judgment creditor holding an execution against the bankrupt duly returned unsatisfied at the time the petition was filed. What rights and remedies then had a judgment creditor of the bankrupt holding an execution duly returned unsatisfied at the time of the filing of the petition in bankruptcy? Had he any lien or right to the property superior to that of the lessor? The answer to these questions must be found in the statutes of the state of Colorado but those statutes and the decisions of the courts thereunder satisfy that a judgment creditor with an execution returned unsatisfied has no lien upon any of the personal property of his debtor in Colorado. While the delivery of an execution to the sheriff with instructions to collect the judgment on which it is sued out from the personal property of the debtor creates a lien upon that property for the collection of the judgment from the delivery of the execution, a delivery with instructions to do nothing toward such collection or a delivery with instructions to do nothing until further orders, or to return the execution unsatisfied, much more, the return of it unsatisfied, waives the right to enforce it and discharges the lien of it as against the defendant and all claiming under him. Revised Statutes of Colorado 1908, sec. 3626; Williams v. Mellor, 12 Colo. 1, 7, 19 Pac. 839; Sparks v. Weartherly, 176 Ala. 324, 58 South. 280, 281; Chaney et al. v. Burford Lumber Co., 132 Ala. 318, 31 South. 369.

The discussion of the question presented has proceeded on the theory that the property in controversy was personal property. If, however, it was real estate, a judgment creditor with an execution unsatisfied would have had no lien upon it in the absence of the previous filing of a certified copy of the docket entry of the judgment with the clerk of the county. There is no evidence of any such filing in this case and the rights of a judgment creditor who had made such a filing were not conferred upon the trustee by the amendment of 1910, Revised Statutes of Colo. 1908, § 3609. The result is that under the statutes of Colorado and the facts disclosed by this record the amendment of June 25, 1910, conferred upon the trustee no greater rights, liens, or remedies against the lessor than he would have had if that amendment had not been made. He had the title to the property of the bankrupt conferred by section 70a and the other sections of the bankruptcy law and no more, and that title was "the title of the bankrupt as of the date he was adjudged a bankrupt," and that title was subject to the lien of the lessor evidenced by the lease and by the persuasive equity in its favor. York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782; Sexton v. Kessler, 225 U. S. 90, 97, 32 Sup. Ct. 657, 56 L. Ed. 995; Clark v. Snelling, 205 Fed. 240, 242, 243, 123 C. C. A. 430, 432, 433. The conclusion is that if the leased premises had

remained the property of the original lessor, the equitable lien in its favor evidenced by the lease and the facts of this case would have been valid and superior in law and equity to that of the trustee, although the lease was neither acknowledged nor recorded.

[3] The second contention of counsel for the trustee is that the Telluride Company cannot avail itself of the lien and title of the lessor because it did not acquire it until after this action was commenced, but his predecessors in interest, the earlier lessors, held this lien all the time after the lease was made. This is an action by the trustee for damages to the estate of the bankrupt he represents by the alleged taking and appropriation to its own use by the Telluride Company of the stamp mill and its appurtenances. If, as now appears, the interest of the trustee, if any, in that property, was subject to the lien or title of the lessor at the time of the sheriff's sale and on that account was of no value, that fact was a complete defense to this action, whether that superior lien or title was held by the original lessor or by the Telluride Company, and the fact that the latter acquired that lien or title after this action was commenced did not detract from its availability or completeness as a defense.

[4, 5] The next position of counsel for the trustee is that the property in controversy, and especially the machinery, tools, and other articles placed in the buildings to make them a stamp mill, do not constitute the improvements referred to in the lease, and hence the lien of the lease never attached to them and the title to them thereunder never matured. But the record discloses the facts that when this lease was made, a large part, if not all, of this machinery was in another mill some distance from the leased property, that the main purpose of the parties to the lease was, as that instrument declares, "the construction and maintenance thereon of a stamp mill and such other buildings as may be required by the said party of the second part (the lessee) and its assigns in connection with its milling operations," and that this lessee covenanted in its lease that—

"All improvements erected on said premises by said second party * * * are bound for the payment of each installment of rent and for the county and state taxes."

The lessee, in the accomplishment of the purpose of constructing and maintaining its stamp mill, erected and maintained not only buildings that might contain, but also the machinery and tools, which, with the buildings, constituted the stamp mill. It erected in the buildings on the leased premises a 50 H. P. motor, a 10 H. P. motor, a Blake crusher, two transformers, two Wilfley tables, two copper plates, two sets of stamps and motors, shafting, pulleys, belts, and the other requisite tools and machinery to do the work of a complete, useful, and operative stamp mill. If we consider the literal terms of the lease, they provide that all improvements erected on said premises are bound for the payment of the rent and taxes. The buildings, the shells of the stamp mill, were not all the improvements the lessee erected. Those improvements included the machinery and tools which made those buildings a stamp mill and gave them their chief value. The

record contains evidence that this machinery and these tools were essential to constitute a useful and operative stamp mill. And if in addition to the terms of the lease we consider the situation and circumstances of the parties to it at the time they made it, their purpose, and acts thereunder, the conclusion is irresistible that they intended by the terms of this lease to bind all the machinery and tools requisite to make an operative stamp mill, as well as the buildings necessary to contain them, to the payments of the rent and taxes. The intention of the parties to a contract, when manifest or when ascertained from their written agreement in accordance with the basic rules of interpretation, must prevail unless such intention is directly contrary to the binding terms of the contract. Amer. Bonding Co. v. Pueblo Inv. Co., 150 Fed. 17, 28, 80 C. C. A. 97, 108, 9 L. R. A. (N. S.) 557, 10 Ann. Cas. 357; United States Fidelity & Guaranty Co. v. Board of Com'rs of Woodson County, Kansas, 145 Fed. 144, 148, 76 C. C. A. 114, 118.

Counsel have cited and the court has examined the authorities on the meaning of the word "improvements," and on the question what are trade fixtures and under what circumstances a tenant, who has paid his rent, may remove them at the end of a term; among others, Garland v. Samson, 237 Fed. (8th C. C. A.) 31, 37, 150 C. C. A. 233; In re Howard Laundry Co., 203 Fed. (2d C. C. A.) 445, 447, 121 C. C. A. 555; Updagraff v. Lesem, 15 Colo. App. 297, 302, 303, 305, 62 Pac. 342; Royce v. Latshaw, 15 Colo. App. 420, 425, 62 Pac. 627; Horn v. Clark Hdw. Co., 54 Colo. 522, 528, 131 Pac. 405, 45 L. R. A. (N. S.) 100; Gibson v. McNichols, 51 Colo. 54, 58, 116 Pac. 1041; Armstrong Cork Co. v. Merchants' Refr. Co., 184 Fed. 199, 208, 209, 107 C. C. A. 93, 94; Puzzle Co. v. Morse Co., 24 Colo. App. 74, 80, 82, 131 Pac. 791. But the question here is not what articles the lessee, having paid its rent, might have removed from the premises at the end of the term of the lease as trade fixtures, if it had not made the contract therein that the improvements it put on the leased premises in erecting the useful and operative stamp mill should be bound to pay the rent and taxes. On the other hand, the question is, what articles the parties intended and agreed should be bound by that contract, and a study of the agreement of the parties, the authorities cited, and others, has led to the conclusion already stated.

[6] The fourth contention of the trustee's counsel is that the original lessor, the San Miguel Company, waived its lien before that lien was foreclosed and before its title thereunder matured and was assigned to the Telluride Company. This claim of waiver is based upon the following facts: Within four months prior to the filing of the petition in bankruptcy against the Weller Company, the Telluride Company caused the proper sheriff to levy upon and sell many pieces of the machinery and other property constituting the stamp mill, which had long ceased to operate, under a judgment for $4,423.35, which E. H. Sackett had recovered against the Weller Company on November 11, 1915, and had assigned to the Telluride Company on February 18, 1916. The sheriff's sale took place on September 19, 1917, and the Telluride Company purchased at that sale a large part of the ma-

chinery and tools. Five days after this sale, the creditors of the Weller Company filed their petition in bankruptcy and charged, and the court subsequently adjudged, that this sheriff's sale was preferential and void under section 3 (3) and 60 (b) of the Bankruptcy Act (9 Comp. Stat. sec. 9587, p. 11054, and section 9644, p. 11538). The trustee, however, abandoned the property sold under this levy and brought this action against the Telluride Company for damages. When the sheriff's sale was made, the San Miguel Company was the lessor and held its equitable lien upon the property sold for its rent and taxes. The execution sale purported to convey nothing but the lessee's interest in the property. That sale was attacked and adjudged void at the suit of the creditors whom the trustee now represents. The argument for the trustee is that, because the San Miguel Company did nothing while this levy and sale and removal of the machinery thereunder from the buildings by the Telluride Company were going on, it waived its right to its lien thereon as against the trustee.

[7] But an estoppel is an indispensable element of a waiver. Where there is no estoppel, there is no waiver. Hampton Stave Co. v. Gardner, 154 Fed. (8th C. C. A.) 805, 808, 83 C. C. A. 521; Ins. Co. v. Wolff, 95 U. S. 326, 332, 24 L. Ed. 387; Assurance Co. v. Building Ass'n, 183 U. S. 308, 357, 22 Sup. Ct. 133, 46 L. Ed. 213; Society v. McElroy, 28 C. C. A. 365, 372, 83 Fed. 631, 640; Rice v. Fidelity & Deposit Co., 103 Fed. 427, 435, 43 C. C. A. 42, 45; United Firemen's Ins. Co. v. Thomas, 82 Fed. 406, 27 C. C. A. 42, 92 Fed. 127, 34 C. C. A. 240, 47 L. R. A. 450; Williams v. Neely, 67 C. C. A. 171, 180, 134 Fed. 1, 11, 69 L. R. A. 232. And the indispensable elements of an estoppel are: (1) Ignorance of the party who invokes the estoppel, or of him from whom such party derives his claim, in this case the trustee. or the bankrupt; (2) a representation by the party estopped which misleads; (3) and an innocent and detrimental change of the party asserting the estoppel in reliance upon the representation. Northern Assur. Co. v. Grand View Bldg. Co., 101 Fed. (8th C. C. A.) 77, 85, 41 C. C. A. 207. The record in this case fails to establish that either the bankrupt who must have known the terms of his contract and his failure to pay his rent and taxes when this sheriff's sale was made, or the trustee whose duty it was to learn the facts regarding this matter and to elect whether he would take the leasehold estate or abandon it, were ignorant of the situation in which all parties stood, or that they were led to believe by the mere silence and inaction of the lessor that it neither claimed nor had any lien, or that either of them was induced to change his situation or action to his detriment by such silence or inaction of the lessor. There was, therefore, no waiver of its lien by the San Miguel Company as against the bankrupt or his trustee.

[8] Finally, counsel for the trustee argues that because the Telluride Company paid $2,500 at the sheriff's sale for the interest of the bankrupt in the property in controversy and credited that amount in part payment of its judgment against the Weller Company, the trustee is entitled to recover that sum from the Telluride Company. But the trustee acts and has acted for the general creditors who rendered that

sheriff's sale and the title under it void and deprived the Telluride Company of any benefit therefrom. They and he compelled that company to lose all title and benefit from the sale, and neither he nor the general creditors he represents have any legal or equitable claim to such a recovery. The title to the property in dispute which prevails descends from the lien of the lessor, the San Miguel Company, which, by foreclosure after the sheriff's sale, ripened into a title and was subsequently bought by the Telluride Company. For that title the Telluride Company is not indebted, either at law or in equity, either to the bankrupt or to his creditors or to the trustee, and the latter's claim for this $2,500 cannot be sustained.

Let the judgment below be affirmed.

STONE, Circuit Judge (dissenting). I am compelled to dissent for the reasons following: The statutes of Colorado provide that, "all bills of sale, deeds of trust, and other conveyances of personal property as shall have the effect of a mortgage or lien upon such property" shall be void "as against the rights and interests of any third person" unless the property be delivered and remain with the mortgagee or the instrument be acknowledged and recorded (Rev. St. Colo. 1908, §§ 521, 512, 513.

As to real estate, the provision is that all "deeds, conveyances, agreements in writing of, or affecting title to real estate or any interest therein," shall be recorded to be effective against "subsequent bona fide purchasers and encumbrancers by mortgage, judgment or otherwise not having notice thereof" (R. S. Colo. § 694), and the term "real estate" is defined as " 'lands, tenements and hereditaments,' and as embracing all mining claims and other claims, and chattels real" (Rev. St. Colo. 1908, § 707), and the term "deed" as including "mortgages, leases, releases and every conveyance or encumbrance under seal" (section 707). The comprehensive character of these statutory provisions seems clearly to show that they are intended to prevent secret liens of all character on real, personal, or mixed property which might result in loss to subsequent innocent purchasers, creditors of or dealers with the ostensible owner in possession of the property. . I think that by whatever name this lien may be designated, and whether the property was real or personal, the statutes apply, and make it void as to subsequent creditors. A number of such subsequent creditors appear in the schedule of debts of the bankrupt, and they lost no rights or legal standing in this respect because of the bankruptcy proceeding. The lien therefore is in my judgment void as to the trustee.