## In re AMERICAN FORK EXPLORATION CO.

## HEMPHILL v. PACIFIC GOLD MIN. & MILL. CO.

(Circuit Court of Appeals, Eighth Circuit.   June 4, 1923.)

### No. 5808.

1. **Pleading ⊚⇒423—Objection to petition for reclamation held made too late.**

Where the petition of a claimant of property filed in a bankruptcy proceeding recited that certain exhibits were attached which was admitted by the trustee on the hearing and the exhibits were introduced and considered. both by the referee and the District Court without objection, after the court had announced its decision it was too late to object to the sufficiency of the petition on the ground that the exhibits were not in fact attached thereto.

2. **Mines and minerals ⊚⇒69—Under terms of mining lease on its termination lessor held entitled to all "improvements" made, including reduction mill and machinery.**

Under a lease of lode mining claims for a term of years, for working by lessee, providing that on its termination the premises should be delivered up to lessor "with the appurtenances and improvements, including all buildings, tracks, rails and all improvements erected or builded upon said premises during the life of this lease," on termination of the lease lessor *held* entitled to all "improvements" placed on the property by lessee, including a mill and machinery therein for reduction of the ore, known by the parties to be necessary for economical transportation to a smelter.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Improvement (On Mining Claim).]

3. *Contracts ⊚⇒147(2)—Expressed intention of parties must govern their rights.*

The intention of the parties to a contract when manifest, or when ascertained from their written agreement in accordance with the basic rules of interpretation, must prevail unless such intention is directly contrary to the binding terms of the contract.

Appeal from the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

In the matter of the American Fork Exploration Company, bankrupt. Appeal by George E. Hemphill, trustee, from order granting petition of Pacific Gold Mining & Milling Company for reclamation of property. Affirmed.

B. N. C. Stott, of Salt Lake City, Utah (J. Tracey Wootton, of Salt Lake City, Utah, on the brief), for appellant.

E. V. Higgins, of Salt Lake City, Utah (A. R. Barnes, of Salt Lake City, Utah, on the brief), for appellee.

Before HOOK, Circuit Judge, and TRIEBER and NEBLETT, District Judges.

NEBLETT, District Judge.   The Pacific Gold Mining & Milling Company, appellee, was the owner of a group of lode mining claims situated in Utah county, state of Utah.   On the 5th day of June, 1914, it leased said group of lode mining claims to one P. D. Miller, which lease was thereafter in the year 1915, assigned by said Miller to the American Fork Exploration Company.   After the assignment of the

lease the American Fork Exploration Company proceeded to work and develop said mining claims and placed thereon houses for its workmen, machinery for the working of the mine, and mill, and machinery for the working, reduction, and treatment of the ores to be taken from the mine. The lease executed on June 5, 1914, contained, among other provisions, the following:

"To deliver up to said lessor the said premises with the appurtenances and improvements, including all buildings, tracks, rails and all improvements erected or builded upon said premises during the life of this lease, in good order and condition, reasonable use and wear thereof excepted, without demand or further notice at the termination of this lease, or at any time previous, if any of the covenants or agreements herein contained are violated by him."

It was also provided in said lease that in the event the said lessee should pay the lessor within five years from the date of the lease royalties in a sum equal to $50,000, then the term of the lease should be extended for a period of five years from and after the 5th day of June, 1919, unless otherwise forfeited for violation of other covenants contained in the lease. The American Fork Exploration Company having failed to pay the full sum of $50,000 royalties, as required by the terms of the lease, on April 28, 1919, entered into a written agreement with the Pacific Gold Mining & Milling Company by the terms of which agreement the American Fork Exploration Company was given an extension of time until June 5, 1920, within which to pay the balance of the $50,000 royalties required to be paid by the terms of the original lease before the 5th day of June, 1914, and by said written agreement were given the further option to continue in possession and the working and operating of the mining claims for a period of four years from June 5, 1920. Said agreement of April 28, 1919, contained a provision as to the ownership of all buildings, machinery, and personal property then upon the mining claims as follows:

"In consideration of the modifications above mentioned and herein granted by the first party, said second party agrees that all improvements of every nature whatever whether the property of the first party and taken over by second party or its assignors under the terms of said lease, or heretofore or hereafter placed upon the said leased premises by the said Miller or by the second party or its assigns, including all buildings, engines, boilers, tracks, rails, tools, and appliances, and mining machinery of any and all kinds, are to be and remain thereon and are not to be removed therefrom; and are by said second party to be kept free from claims or liens for labor or materials and to be fully protected therefrom. That at the expiration of said lease, whether by forfeiture by reason of noncompliance on the part of the second party with its terms or otherwise, the title and right of possession to all of the improvements and equipment of whatsoever kind or nature, including those above specifically mentioned, so placed on said premises as aforesaid, shall thereupon forthwith be and become vested in the first party and shall thereupon, together with the personal property of the first party taken over by second party or its assignor under said lease, be delivered to the first party by the second party free and clear of all claims or liens or incumbrances, in good order and condition, reasonable use and wear thereof excepted, and without demand or further notice."

On the 9th of August, 1919, an involuntary petition in bankruptcy was filed in the United States District Court for the district of Utah

to adjudge the American Fork Exploration Company a bankrupt, and it was thereafter, on the 6th day of November, 1919, adjudged a bankrupt. On the 28th day of January, 1920, George C. Hemphill was duly appointed and qualified as trustee for the bankrupt, and filed with the referee in bankruptcy an inventory of the assets of the bankrupt, including in such inventory the buildings, mill building, machinery, and all other property which had been erected and placed on the leased premises by the American ·Fork Exploration Company, claiming the same as the property of the bankrupt estate. Thereafter the Pacific Gold Mining & Milling Company filed a petition in intervention with the referee in bankruptcy claiming all the buildings, mining machinery, milling machinery, assay office, tools, supplies, equipment, kitchen utensils, dishes, and all the property located upon its mining claims, and which had been inventoried and claimed for the bankrupt estate by the trustee. Intervener's petition was sustained by the referee, with the exception of certain personal property mentioned in his order, which was adjudged to be the property of the bankrupt estate.

From the decision of the referee in bankruptcy a certificate of review was taken to the United States District Court for the District of Utah. Trial was had before the court and judgment entered by the court awarding possession to the Pacific Gold Mining & Milling Company of all mill buildings, bunkhouses, boarding houses, dwelling houses, and other buildings situated upon the premises covered by the lease, all machinery and tools upon the premises which had been placed thereon by the lessee and actually used in the working of the mine and the operation of the mill. From the decree of the District Court awarding appellee said property the trustee in bankruptcy prosecutes this appeal.

[1] After the judge had filed his opinion in this cause in the court below, deciding the issues, but before final judgment was entered thereon, the appellant filed a motion in the case praying judgment on the pleadings, and as grounds in support of the same alleged that the petition in intervention filed by the appellees did not state a cause of action, for the reason that the original lease, dated June 5, 1914, and the extension agreement, dated April 28, 1919, designated in the petition in intervention as Exhibits A and B, attached to the same, were not, in fact, at the time of the filing of said motion for judgment on the pleadings attached to the petition in intervention.

An examination of the record in this case discloses that at the time of the hearing on the petition in intervention before the referee, and the hearing on the same before the United States District Court for the District of Utah, the parties to this litigation and their attorneys assumed that Exhibits A and B were attached to the petition in intervention. At the hearing before the referee it was stipulated by the attorney for the trustee that the execution of the contracts which were attached to the petition in intervention of the Pacific Gold Mining & Milling Company (referring to Exhibits A and B) had been established as duly executed. The trustee's affidavit filed with the referee July 13, 1920, stated that said Exhibits A and B were attached to the petition in intervention. The trustee by his answer filed to the petition in

intervention in effect admits that said Exhibits A and B were attached to the petition. Exhibits A and B were introduced in evidence and were before the referee and the court on the trial of this cause and no objection made on the ground that they were not attached to the petition in intervention until after the judge had filed his opinion deciding the issues against the appellee.

We think in view of the admissions of appellant's attorney at the hearing and the admissions made in the trustee's affidavit, and answer filed to the petition in intervention that said exhibits were attached to the petition in intervention and that no objection was made at the trial to their introduction in evidence, it is too late after the decision was handed down for the trustee to then make the objection. We think the court under the circumstances properly overruled the motion for judgment on the pleadings.

[2] The appellant contends that the buildings, especially the mill building, and machinery in the mill and on the mine which had been used in the working and operation of the mine and mill and placed on the leased premises by the American Fork Exploration Company, are trade fixtures, and are the property of the bankrupt estate, and may be removed by the trustee from the premises on the expiration of the term of the lease. This contention might be correct if there was no agreement between the parties to the lease as to who should be the owner of the buildings, machinery, and improvements placed on the premises by the lessee.

We have considered carefully the authorities cited in appellant's brief on the question of what are trade fixtures. We do not think it is a question in this case of what are trade fixtures which a tenant may remove on the expiration of his lease, but what did the lessee covenant with the lessors they would surrender and suffer to remain on the premises on the termination of the lease. The title to the property here in controversy is determined by the provisions of the Miller lease, dated June 5, 1914, quoted in the first part of this opinion. The parties to this lease were at liberty to contract in any manner they might see fit as to who should be the owner of the improvements and machinery placed on the premises during the term of the lease, and they did so contract by the provision of the lease referred to. We think the clause in the lease providing the lessor is to deliver up "the appurtenances and improvements, including all buildings, tracks, rails and all improvements erected or builded upon said premises during the life of this lease," when properly construed, is sufficient to convey title to all the property awarded by the decree of the District Court to appellant.

[3] The intention of the parties to a contract, when manifest or when ascertained from their written agreement in accordance with the basic rules of interpretation, must prevail unless such intention is directly contrary to the binding terms of the contract. Lewin v. Telluride Iron Works Co. (C. C. A.) 272 Fed. 590.

From the plain language of the lease it was certainly the intention of the parties to the lease that all buildings, including the mill building, tracks, and rails placed upon the premises during the term of

the lease, should become the property of the lessors. The other property awarded by the court to the appellee consisted of machinery and other articles placed in the mill and was actually used in its operation and necessary to make a complete operating mill for the reduction and treatment of ores.

An examination of the lease shows that at the time the same was entered into it was contemplated by the parties that a mill might be erected upon the leased premises for the reduction and concentration of ores for convenient transportation to the smelter. The lease contained a provision that a royalty of 15 per cent. on the net smelter returns should be paid to the owners on all concentrates mined and shipped from the premises, and further provided that the lessee should take over all water rights and mill sites of the lessors. The mines were located at a great distance from railroad transportation. The parties to the lease realized that certain classes of ore could not be transported to the smelter and pay the operators a profit in the form in which they would be taken out of the mine unless the same were reduced to more compact form; that is, reduced to concentrates. The erection of the mill for the reduction and treatment of ores was a carrying out of the plan of the working of the mines in contemplation of the parties to the lease at the time they executed the same for the general working and development of the mining claims. The mines were taken over by the lessee for the purpose of taking out mineral values and marketing the same as economically as it could be done under circumstances and obtain as large a sum of money as possible for both the lessee and the owners of the property, and in carrying out such purpose the lessee deemed it advantageous to erect a mill and equip it with machinery as a useful and operative reduction mill.

We agree with the learned judge before whom this case was tried that the word "improvements," in that portion of the contract that "all improvements erected or builded upon said premises during the life of this lease," must be given a broader meaning than the word "buildings" preceding it, and must be so construed as to make effective the words "erected or builded upon said premises" and the machinery placed in the mill and necessary to its use as complete operative stamp mill are improvements coming within the meaning of the language "erected or builded upon said premises" and constitute with the building one improvement.

The Pacific Gold Mining & Milling Company is entitled to recover the property awarded it by the lower court under the terms of the original lease. We therefore do not consider it necessary to pass upon the question of whether or not the extension agreement dated April 28, 1919, was a fraud upon the creditors of the bankrupt estate and was not entered into for a present fair consideration. The appellee did not recover anything by reason of its provisions in the lower court, and appellant contends that it is void and conveyed no interest in the improvements on the premises. The agreement contained in the original lease as to who should be the owner of the improvements on the premises during the term of the lease being sufficient to determine the title to the property here in controversy, we think the court's ruling in re-

fusing to permit the trustee to file his answer to the petition in intervention and to reopen the case to permit testimony to be given by the trustee on this question was correct.

Judgment of the lower court is affirmed.

HOOK, Circuit Judge, participated in the hearing of the case and concurred in the conclusion reached, but died before the opinion was prepared.